

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-8-2003

# USA v. Dixon

Precedential or Non-Precedential: Precedential

Docket 02-1586

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Dixon" (2003). *2003 Decisions.* Paper 515.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/515

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed May 2, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-1586

UNITED STATES OF AMERICA,

v.

CLIVE A. DIXON,
                    Clive Dixon, Appellant

APPEAL FROM
THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 01-cr-00007)
District Judge: The Honorable Gary L. Lancaster

ARGUED January 22, 2003

Before: BECKER, *Chief Judge*, NYGAARD and AMBRO,
*Circuit Judges.*

(Filed: May 2, 2003)

Karen S. Gerlach, Esq. (Argued)
Renee Pietropaolo
Office of Federal Public Defender
1001 Liberty Avenue
1450 Liberty Center
Pittsburgh, PA 15222

*Counsel for Appellant*

Bonnie R. Schlueter, Esq. (Argued)
Shaun E. Sweeney, Esq.
Office of United States Attorney
633 United States Post
   Office & Courthouse
Pittsburgh, PA 15219

*Counsel for Appellee*

---

## OPINION OF THE COURT

NYGAARD, *Circuit Judge.*

In this case, we address whether it is significant in a prosecution under the Immigration and Nationality Act, 8 U.S.C. § 1326, that an alien is incarcerated when "found" in the United States. We join several other Courts of Appeal in holding that a violation of § 1326 requires only that an alien return illegally to the United States, and be subsequently discovered here.

### I. Facts

Appellant Clive A. Dixon entered the United States in 1988, and remained beyond the authorized 29-day period. In 1991, Dixon was arrested for a drug trafficking violation in Allegheny County, Pennsylvania, and the government seized his passport. The INS then issued Dixon an Order to Show Cause and Notice of Hearing, notifying him that he was subject to deportation under § 241(a)(1)(B) of the Act. An immigration judge issued an oral decision granting Dixon voluntary departure status until April 25, 1992, with an alternate order of deportation to Jamaica. In keeping with customary practice, the oral decision afforded Dixon

six months to voluntarily depart the United States, after which time he would be subject to involuntary deportation by the INS.

The INS appealed to the Board of Immigration Appeals, challenging the grant of voluntary departure status. Because this appeal acted as an automatic stay, Dixon was not subject to deportation throughout 1992.

In 1993, Dixon was convicted of possessing cocaine with intent to distribute, and sentenced to three to six years of imprisonment. The INS withdrew its appeal, and the BIA ordered the record returned to the immigration judge. The INS issued a Warrant of Removal/Deportation on December 14, 1994, which stated that Dixon was subject to removal/deportation. In accordance with custom and practice, the INS had no intention of executing the Warrant until six months after the BIA dismissed the appeal. Dixon began serving a three-year prison sentence for his drug trafficking conviction on January 24, 1995.

Three years later, Dixon was paroled, and immediately taken into custody by the INS. Pursuant to the 1994 Warrant, the INS deported Dixon from the United States on March 10, 1998.

Dixon then illegally reentered the United States. On December 6, 2000, Dixon was arrested for a traffic violation by local police in Wilkinsburg, Pennsylvania. Two days later, the Pennsylvania State Police telephoned the INS to inform the agency that Dixon, who had previously been deported, had reentered the country and had been arrested. According to the United States Department of Justice INS "Work Sheet for Oral Report" form dated 12/06/00, the State Police informed the INS that Dixon was being housed at the Allegheny County Jail, and would be transferred to Western Penitentiary, to be held on the parole violation. At the bottom of this Report, there is a handwritten note: "How individual came to INS attention." No one by the name of Clive Dixon had received permission by the Attorney General to reenter the United States.

Dixon was charged with illegal reentry into the United States in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2): "reentry of a removed alien after being convicted of an

aggravated felony." He filed a motion to dismiss the indictment, claiming that the government must prove that at the time the INS found him, his presence in the United States was voluntary, and also a motion *in limine* to preclude the government from introducing evidence of prior deportation. After the District Court denied Dixon relief on both motions, he entered a conditional plea of guilty to the charge, reserving the right to challenge the District Court's ruling.

## II.   Discussion

Under 8 U.S.C. § 1326(a), any alien who has been deported and thereafter "enters, attempts to enter, or is at any time found in the United States," commits a felony. Dixon argues that because he was "found in" the United States while he was involuntarily incarcerated, he lacked the requisite intent to violate § 1326. This creative argument is meritless.

The precise circumstances of Dixon's return to the United States are neither known nor germane to our decision. It is sufficient for the issue before us that he returned illegally. That is not in dispute. That having been said, we join other circuits in holding that a violation of 18 U.S.C. § 1326 only requires an illegal return and a subsequent discovery. *See United States v. Salazar-Robles*, 207 F.3d 648, 650 (9th Cir. 2000) (concluding that an alien convicted of being a deported alien "found in" the United States was properly prosecuted when the INS "found" him incarcerated) (following *United States v. Ortiz-Villegas*, 49 F.3d 1435, 1437 (9th Cir. 1995)); *United States v. Herrera-Ordones*, 190 F.3d 504, 511 (7th Cir. 1999) (stating that whether an alien was in a particular location by choice has no relevance to the intent required to support a conviction for being "found in" the United States); *United States v. Asibor*, 109 F.3d 1023, 1037 (5th Cir. 1997) (holding that a previously deported alien who surreptitiously reenters the country can be "found in" the United States while incarcerated). Although the act of returning to the United States must be voluntary, it is not relevant whether an alien's continued presence in the United States was voluntary at the moment of discovery.

Dixon uses our decision in *United States v. DiSantillo*, 615 F.2d 128 (3d Cir. 1980), to weave an argument that goes as follows: because a violation of § 1326 cannot be a continuing offense, and because an alien cannot be found until immigration authorities note his presence, the facts regarding the time before Dixon was discovered are not relevant, and he was involuntarily held when he was "found in" the United States. There are several problems with this line of reasoning. First, our holding in *DiSantillo* is more narrow. In *DiSantillo*, we held that being found in the United States is not a continuing offense when the alien entered through a recognized port of entry, and therefore the five-year statute of limitations begins to run when the deported alien passed through the recognized port of entry. We did not address involuntary incarceration. Second, Dixon's contention — that because he did not voluntarily place himself in prison, he did not voluntarily commit the act which completes the crime of being found in the United States — defies a commonsense reading of the statute. We conclude that although Dixon's "argument is neat and not without attractiveness . . . it won't wash." *Salazar-Robles*, 207 F.3d at 650.

Here, there is nothing in the record to indicate that Dixon's illegal return to the United States was involuntary.[1] The Government is only required to prove that Dixon had the general intent to reenter the United States, and based on the facts of the record, the only reasonable conclusion is that Dixon's return was voluntary. We therefore hold that Dixon could be "found in" the United States for the purposes of § 1326 while involuntarily incarcerated.

Dixon also contends that the District Court's application of his prior deportation as a predicate to his illegal reentry conviction under 8 U.S.C. § 1326 was a violation of due process. This argument fails as well. Essentially, Dixon is collaterally attacking his deportation order under § 1326(d).[2]

---

1. In oral argument, Dixon's counsel held out the possibility that he may have been drugged or kidnaped and involuntarily brought in the U.S. That possibility is belied by his statements at sentencing.

2. Dixon does not dispute the applicability of § 1326(d) on the ground that his challenge is to the INS's execution of the deportation

The District Court correctly found that he had failed to satisfy the requirements for such a collateral attack. First, Dixon did not exhaust his administrative remedies: he did not file an appeal from the Oral Decision by Judge Vinikoor. In addition, Dixon did not show that he was deprived of the opportunity for judicial review of the deportation proceedings.

In sum, and for the foregoing reasons, we will affirm.

A True Copy:
     Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*

---

order—although the INS at one point characterizes his argument in this way—rather than to the order itself. We therefore leave for another day the question whether the requirements of § 1326(d) must be met in order to permit a challenge to a deportation that allegedly does not comply with an order directing deportation.