**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 23 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

FELIPE JIMENEZ-ALCALA,

Defendant-Appellant.

No. 03-6119

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. CR-02-178-T)**

---

Submitted on the briefs: [*]

Julia C. Summers, Assistant Federal Public Defender, Oklahoma City, Oklahoma, for Defendant-Appellant.

Robert G. McCampbell, United States Attorney; Rozia McKinney-Foster, Assistant United States Attorney, Oklahoma City, Oklahoma, for Plaintiff-Appellee.

---

Before **TACHA** , Chief Judge, **McKAY** and **McCONNELL** , Circuit Judges.

---

[*]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). This case is therefore submitted without oral argument.

**McCONNELL** , Circuit Judge.

Appellant Felipe Jimenez-Alcala was convicted on one count of being an alien found in the United States, without the permission of the Attorney General, after a previous deportation subsequent to a conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2). He was sentenced to 70 months' imprisonment, with three years of supervised release and a $100 special assessment. He challenges this conviction and sentence on three grounds: (1) an erroneous jury instruction on the meaning of the term "national," (2) improper comments by prosecution witnesses, and (3) entitlement to a downward adjustment for acceptance of responsibility. We affirm the district court.

Mr. Jimenez-Alcala was born in Mexico and brought to the United States by his parents when he was ten years old. By his own account, while living in California he "sustained a number of misdemeanor and felony convictions, some for serious matters." Appellant's Br. 4. He was deported "a number of times," but "he always came back." *Id.* His parents, siblings, wife, and child live in the United States. On September 2, 2002, Mr. Jimenez-Alcala was a passenger in a vehicle stopped by the Oklahoma Highway Patrol. Mr. Jimenez-Alcala supplied his name, and after a routine check the trooper found he was wanted as an illegal alien, which led to the current prosecution.

At trial, Mr. Jimenez-Alcala admitted his status as an "alien," his prior deportations, and his prior conviction for an aggravated felony. He testified in his own defense regarding his background and connection to the United States. His defense appears to have been that, because of his ties and allegiance to the United States, he was a "national" and thus not subject to 8 U.S.C. § 1326.

At the jury instruction conference, after presentation of the evidence, the district court announced its intention to instruct the jury regarding the definition of "alien." That instruction, which was ultimately given, is as follows:

JURY INSTRUCTION NO. _____

"ALIEN" - DEFINED

> The term "alien" means any person who is not a citizen or national of the United States. The term "national of the United States" means a person who, though not a citizen of the United States, owes permanent allegiance to the United States.
>
> You are further instructed that one does not become a "national of the United States" simply by residing in the United States for a lengthy period of time. The definition "national of the United States" also does not include a person who illegally enters the United States and subjectively considers himself a person who owes permanent allegiance to this country. Examples of "nationals of the United States" include residents of American Samoa and Swains Island and persons who have submitted an application for United States citizenship.

In response, defense counsel stated: "With regard to that instruction, I have no contrary authority. It is not something that I have researched. I would ask that

-3-

that paragraph not be included insofar as it is not the law of the Tenth Circuit and that we proceed with the instruction as originally proposed."

Jury instructions are reviewed "to determine whether, as a whole, the instructions correctly state the governing law and provide the jury with an ample understanding of the issues and applicable standards." *United States v. Fredette*, 315 F.3d 1235, 1240 (10th Cir. 2003) (internal quotation marks omitted). "While we consider the instructions as a whole *de novo* to determine whether they accurately informed the jury of the governing law, the district court's decision to give a particular jury instruction is reviewed for abuse of discretion." *Id.* at 1241.

Mr. Jimenez-Alcala argues that the challenged instruction "was confusing to the jury because it effectively shifted the burden of proof to the defendant by declaring who cannot be a 'national,' and misled the jury by providing examples of 'nationals' which are not definitive." Appellant's Br. 11. We do not agree. The jury instructions placed the burden on the government to prove that Mr. Jimenez-Alcala was an "alien," which is the statutorily operative term. There is no prohibition on jury instructions that inform the jury what is not included within a definition, as well as what is included.

8 U.S.C. § 1101(a)(3) defines an "alien" as "any person not a citizen or national of the United States." Thus, a defendant may not be convicted under 8 U.S.C. § 1326 if he was either a citizen or a "national." The term "national of the

-4-

United States" is defined by 8 U.S.C. § 1101(a)(22) as "(A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States." The statutory language is not self-defining, and might not be understood by an average juror. The district court did not err in providing additional explanation.

Traditionally, the term "national of the United States," when applied to non-citizens, referred to persons born in territories of the United States, a category that has almost become obsolete. Justice Ginsburg recently explained:

> Nationality and citizenship are not entirely synonymous; one can be a national of the United States and yet not a citizen. 8 U.S.C. § 1101(a)(22). The distinction has little practical impact today, however, for the only remaining noncitizen nationals are residents of American Samoa and Swains Island.

*Miller v. Albright*, 523 U.S. 420, 467 n.2 (1998) (Ginsburg, J., dissenting). In a recent decision, the Ninth Circuit comprehensively analyzed the text of 8 U.S.C. § 1101(a)(22), the history of the term "national," and the decisions of other courts addressing the issue. *Perdomo-Padilla v. Ashcroft*, 333 F.3d 964 (9th Cir. 2003) (Graber, J.), *petition for cert. filed*, 72 U.S.L.W. 3248 (Sep. 22, 2003) (No. 03-445). The Ninth Circuit concluded that "the term 'national,' when used to describe non-citizens, refers only to those born in territories of the United States." *Id.* at 968. We see no point in repeating that analysis, which we find persuasive and hereby adopt.

The jury instruction provided by the district court was, with one small exception discussed below, a correct statement of the law. The instruction noted, accurately, that a noncitizen does not become a "national of the United States" merely by residing in this country for a lengthy period of time, or by entering illegally and subjectively considering himself a person who owes permanent allegiance to this country. The instruction also correctly listed as "[e]xamples" of nationals residents of American Samoa and Swains Island. In his appellate brief, Mr. Jimenez-Alcala complains that these examples "are not definitive," Appellant's Br. 11, but the jury instruction did not say that they were.

However, the jury instruction was incorrect in one respect. In addition to residents of American Samoa and Swains Island, the instruction listed as among the examples of nationals "persons who have submitted an application for United States citizenship." This example derives from *United States v. Morin*, 80 F.3d 124 (4th Cir. 1996), which sustained the conviction of a defendant for murder of a "national of the United States" where the victim had applied for, but not yet received, naturalization. For reasons ably stated by Judge Graber in *Perdomo-Padilla*, we do not think this is a correct definition of "national." 333 F.3d at 971-72; *accord*, *Salim v. Ashcroft*, No. 02-2244, 2003 WL 22751083 (3d Cir. July 15, 2003). But to the extent that this part of the instruction was in error, it could not have been prejudicial. Mr. Jimenez-Alcala's defense seems to have been that

his long residence in and family connections to the United States could bring him within the definition of a "national." Therefore, he could only have been helped by an instruction that erroneously suggested that a non-citizen could become a national by means of a unilateral profession of allegiance in a citizenship application. As noted above, Mr. Jimenez-Alcala's argument that his strong ties to the United States and feelings of allegiance to it could confer on him "national" status was without merit, and the only error we find in the instructions was actually beneficial to him.

Mr. Jimenez-Alcala's other appellate arguments warrant little discussion. In light of the essentially uncontested facts of the case, which established that Mr. Jimenez-Alcala was a citizen of Mexico, had previously been deported, had previously been convicted of an aggravated felony, and was apprehended in Oklahoma without the permission of the Attorney General to be here, the relatively innocuous statements by government witnesses, from which the jury might have inferred prior criminal acts and brushes with immigration authorities, and which were not the subject of contemporaneous objection, did not constitute plain error. Moreover, in light of the fact that Mr. Jimenez-Alcala pled not guilty and forced the government to present its case at trial, we cannot say that the district court erred in declining to grant a downward departure for acceptance of responsibility.

The judgment of the United States District Court for the Western District of Oklahoma is **AFFIRMED** .