**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 2, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

Nos. 10-3066 & 10-3067

EUSEBIO SIERRA-LEDESMA,

    Defendant-Appellant.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. Nos. 6:97-CR-10124-MLB-1 & 6:09-CR-10104-MLB-1)**

---

Timothy J. Henry, Assistant Federal Public Defender, Wichita, Kansas, for Defendant-Appellant.

Brent I. Anderson, Assistant United States Attorney (Barry R. Grissom, United States Attorney, with him on the brief), Wichita, Kansas, for Plaintiff-Appellee.

---

Before **KELLY**, **BALDOCK**, and **HARTZ**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

---

A jury convicted Defendant Eusebio Sierra-Ledesma of the crime of having been found in the United States, without the express consent of the Attorney General, after having been deported, in violation of 8 U.S.C. § 1326(a). Defendant appeals, claiming (1) the district court improperly failed to instruct the jury as to the mens rea

required for conviction under Section 1326(a); (2) the Government failed to prove beyond a reasonable doubt that Defendant was not a national of the United States; (3) the district court abused its discretion in admitting Defendant's prior conviction for illegal re-entry; and (4) the Government made improper remarks in its closing argument. To the extent that the sentence imposed for his violation of supervised release in a separate action depends upon his conviction for being found in the United States without authorization, Defendant also appeals that sentence. Exercising our jurisdiction pursuant to 28 U.S.C. § 1291, we affirm Defendant's conviction and sentence.

I.

On August 28, 2009, local police officers stopped Defendant for speeding outside of Dodge City, Kansas. Once the officers determined Defendant had been previously deported, he was transported to the Immigration and Customs Enforcement (ICE) office in Wichita, Kansas. An ICE agent determined from reviewing Defendant's electronic alien file and searching ICE databases that Defendant neither sought nor gained permission to reenter the United States after he was deported in 2008. Shortly thereafter, a grand jury indicted Defendant with one count of being an alien who was previously deported and later found in the United States without the proper legal authority.

At trial, the Government presented the following evidence. In 1996, Defendant was removed to Mexico. Nonetheless, authorities discovered Defendant

in Kansas City, Missouri in 1997. He pled guilty to illegal reentry following deportation in violation of Section 1326(a) and was sentenced to eighty-seven months in prison and three years of supervised release. Defendant was deported to Mexico on August 29, 2008. A year (almost to the day) later, authorities found Defendant yet again in the United States in Kansas. After having waived his rights to silence and an attorney, Defendant gave a sworn statement in response to questions posed by an ICE agent with the assistance of an interpreter:

Q. When and where were you born?
A. Dec 16, 1937, Mexico.
Q. Of what country are you a citizen?
A. Mexico.
Q. When, where, and how did you last enter the United States?
A. 2008, Tucson, AZ, walked across the border.
                              ***
Q. When were you last deported?
A. Sept, 2008.
                              ***
Q. Did you illegally re-enter the United States without permission after your last deportation?
A. Yes.
                              ***
Q. Have you ever applied to the Attorney General of the United States for permission to re-enter the United States after your deportation, exclusion, or removal?
A. No.

ROA Supp. Vol. II, Gov. Ex. 15. An ICE agent also testified that a search of all available ICE databases revealed that after Defendant was deported in 2008 he had neither sought nor gained permission to reenter the United States.

Defendant did not call any witnesses. Defense counsel objected to the

admission of Defendant's prior conviction for illegal reentry and requested that the district court instruct the jury it must find Defendant acted with knowledge as to each element of the crime charged. Nevertheless, the district court admitted the evidence of Defendant's prior conviction and refused his request to instruct the jury as to intent. In closing, defense counsel argued the Government had not met its burden with regard to the first and fourth elements of the offense, *i.e.*, that the Government failed to prove Defendant was not a United States national and did not have authorization to return to the United States. At which point, the district court gave the jury an additional instruction on the definition of a United States national at the request of the Government and over the objection of Defendant. Notably, at no point did Defendant suggest he had involuntarily or unintentionally reentered the United States.

The jury returned a guilty verdict. The court sentenced Defendant to 105 months in prison, followed by three years of supervised release. In a parallel action, Defendant was charged with violating the terms of the supervised release imposed as part of the sentence for his 1997 conviction by committing another federal crime (being found in the United States without authorization) and failing to remain outside of the United States. Taking judicial notice of the jury's verdict, the district court determined Defendant had committed the supervised release violations with which he was charged. As a result, the district court sentenced Defendant to twenty-two months in prison to run consecutively to the 105-months sentence for the newly-

4

convicted offense.

## II.

Defendant first argues the district court's failure to instruct the jury as to the intent necessary for conviction pursuant to Section 1326(a) violated his Fifth Amendment right to due process and his Sixth Amendment right to have a jury find all elements of the charged crime beyond a reasonable doubt. He claims Flores-Figueroa v. United States, 129 S. Ct. 1886 (2009), requires that a scienter element applies to all elements of Section 1326's crime of being a previously deported alien found in the United States without authorization. In particular, Defendant protests the district court's omission of "knowingly" from the third element—"found in the United States"—of that crime.

"We review the district court's interpretation of a statute de novo." United States v. Luke-Sanchez, 483 F.3d 703, 705 (10th Cir. 2007). Similarly, we review de novo a district court's "jury instructions as a whole and view them in the context of the entire trial to determine if they 'accurately state the governing law and provide the jury with an accurate understanding of the relevant legal standards and factual issues in the case.'" United States v. Bedford, 536 F.3d 1148, 1152 (10th Cir. 2008) (quoting United States v. Crockett, 435 F.3d 1305, 1314 (10th Cir. 2006)). The Supreme Court has held that the Fifth and Sixth Amendments "require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." United

5

States v. Gaudin, 515 U.S. 506, 510 (1995). "[A]n instruction that omits an element of the offense[,]" however, "does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." Neder v. United States, 527 U.S. 1, 9 (1999). Therefore, when a defendant protests the omission of an element at trial and on appeal, we must decide whether that error is harmless, that is, "whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" Id. at 15 (quoting Chapman v. California, 386 U.S. 18, 24 (1967)).

A.

Section 1326(a) provides:

Subject to subsection (b) of this section, any alien who--
(1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter
(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,
shall be fined under Title 18, or imprisoned not more than 2 years, or both.

Thus, a deported alien may violate Section 1326(a) in three ways: he may (1) illegally reenter the United States, (2) attempt to illegally reenter the United States, or (3) be later found at any time in the United States. Defendant was charged with

6

the last of these three means. Notably, an intent element, such as "knowingly," is absent from the statute's language.

We first discussed at length the mens rea required by Section 1326 in United States v. Miranda-Enriquez, 842 F.2d 1211, 1212 (10th Cir. 1988).[1] Miranda-Enriquez did not expressly declare which provision of Section 1326(a) the Government alleged the defendant had committed—reentry, attempted reentry, or being found in the United States. But we did note the defendant was "permitted . . . to cross the border [by border patrol agents but was] . . . . arrested while driving his pickup truck in Albuquerque, New Mexico[,]" suggesting he was charged with being found in the United States. 842 F.2d at 1212. Regardless, we held "[t]o secure a section 1326 conviction the government must be prepared to show that the defendant's *acts* were intentional." Id. Thus, "the government need not show that defendant willfully and knowingly engaged in *criminal* behavior, but only that the defendant's *acts* were willful and knowing—that the defendant willfully and knowingly reentered the United States and that he did so without the Attorney General's permission." Id.

If any lingering doubt remained as to the application of Miranda-Enriquez's

_____

[1] In United States v. Hernandez, 693 F.2d 996, 1000 (10th Cir. 1982), we declared "Section 1326 contains no requirement of specific intent. . . . Accordingly, the government need not prove that defendant knew he was not entitled to reenter the United States without the permission of the Attorney General." We did not, however, discuss in any detail what other level of intent Section 1326 requires or to which element of Section 1326 that intent applies.

7

holding to Section 1326's offense of being unlawfully found in the United States, United States v. Martinez-Morel, 118 F.3d 710 (10th Cir. 1997), dispelled it. In that case, the district court instructed the jury the Government must prove "First: the defendant is an alien; Second: who was arrested and deported; Third: and who thereafter voluntarily and knowingly was found in the United States; Fourth: without the permission of the Attorney General." 118 F.3d at 713. The defendant claimed the Government must also "prove that he *knowingly* was deported and reentered *knowing* that he did not have the permission of the Attorney General." Id. Rejecting that contention, we held that the Government is not required "to prove a mens rea for those elements of section 1326." Id. We explained that, instead:

> [T]o obtain a conviction under section 1326(a), the government must prove only that the defendant 1) is an alien; 2) who was arrested and deported; and 3) who thereafter voluntarily reentered, attempted to reenter, or was found in the United States; 4) without the permission of the Attorney General. The only intent the government must prove is the "general intent to do the prohibited act, to-wit enter."

Id. (quoting Miranda-Enriquez, 842 F.2d at 1212) (internal citations omitted).[2] We reached that conclusion, after considering some of the same cases Defendant now cites us, such as United States v. X-Citement Video, 513 U.S. 64 (1994), and Staples v. United States, 511 U.S. 600 (1994), because:

> Section 1326 is a regulatory measure passed by Congress that does not proscribe "otherwise innocent conduct." A study of the text reveals that

---

[2] Congress later amended Section 1326 to omit the arrest element. United States v. Wittgenstein, 163 F.3d 1164, 1168 n.1 (10th Cir. 1998).

8

> Congress did not intend to require an alien to know that he or she had been deported prior to illegal reentry into this country. Thus, we reaffirm our earlier holdings . . . that the only mens rea required under section 1326 is the intent to do the act of entering the country.

Martinez-Morel, 118 F.3d at 717. Notably, we did not analyze, approve, or reject the district court's instruction that the Government must prove the defendant "voluntarily and knowingly was found in the United States." Id. at 713. Apparently, neither party challenged that instruction.

We returned once again to the issue of Section 1326's intent element in United States v. Hernandez-Hernandez, 519 F.3d 1236 (10th Cir. 2008). The Government charged the defendant with being "'found in' the United States illegally after a prior deportation." 519 F.3d at 1237 (quoting 8 U.S.C. § 1326). The district court granted the Government's motion in limine to exclude from trial any evidence of Defendant's asserted defense of voluntary intoxication. We determined that the defendant had no right to present such evidence. In so doing, we first reiterated that the only "*mens rea* required to secure a Section 1326 conviction for being unlawfully 'found in' the United States is limited" to "the intent to do the act of entering the country." Id. at 1239 (internal quotations omitted). Second:

> [W]e agree[d] with our sister circuits that an alien's presence in the United States gives rise to a natural, common sense inference that his or her presence was intentional in the very limited, Section 1326 sense. After all, those crossing the border usually do so intending their own physical actions. Still, this inference can be overcome; while most border crossings are surely intentional in the Section 1326 sense, neither can we deny that the trafficking of human beings against their will across international boundaries is a reality. But, "[t]o dispel the

9

inference, the alien would have to demonstrate that one of the speculative possibilities of involuntary entry had actually taken place."

Id. at 1241 (quoting United States v. Quintana-Torres, 235 F.3d 1197, 1200 (9th Cir. 2000)) (internal citations omitted). Because the defendant failed to proffer any evidence suggesting that he was taken across the border against his will, rather than drunkenly crossing the border of his own volition, he was not entitled to present evidence of his intoxication. Id.

B.

With that precedent clearly in mind, we turn to the jury instructions in this case. Defendant requested the district court instruct the jury that the Government must prove:

> First: the defendant *knew* he is not a citizen or national of the United States; that is, an alien at the time alleged in the indictment;
> Second: the defendant *knew* he had previously been deported or removed from the United States;
> Third: the defendant *knowingly* was found in the United States on the date alleged in the indictment; and
> Fourth: the defendant *knew* he had not received consent from the proper legal authority to reapply for admission to the United States.

ROA Vol. 1 at 63 (emphasis added). The district court, however, struck all references to Defendant's knowledge and, instead, instructed the jury that it must find each of the following elements beyond a reasonable doubt:

> First: defendant was an alien at the time alleged in the indictment;
> Second: defendant previously had been deported from the United States;
> Third: defendant was found in Sedgwick County, Kansas on or about August 31, 2009; and
> Fourth: defendant had not received the consent of the proper legal

10

authority to reapply for admission to the United States.

ROA Vol. 1 at 79.

The instruction the district court gave mirrors the 2005 Tenth Circuit Criminal Pattern Jury Instruction 2.05 in all but one respect. The third element of that instruction states "the defendant *knowingly* [entered] [attempted to enter] [was found in] the United States." (emphasis added). Although the district court acknowledged the 2005 Pattern Instruction's language, it determined "[k]nowledge isn't necessary. . . . Knowledge is not necessary when he's charged with being here in the United States." ROA Supp. Vol. I at 49. The court further explained that in its view "knowingly found . . . doesn't mean anything. [Defendant] doesn't have to know that he's found. And anybody who finds him doesn't have to know that he's found. He's found." ROA Vol. II at 136.

We too have expressed our confusion as to "what it would mean to be 'knowingly found.'" Hernandez-Hernandez, 519 F.3d at 1239 n.4. In Hernandez-Hernandez, the Government proposed the district court instruct the jury that it must find the defendant was "knowingly found" in the United States. We explained that, contrary to the suggestion of the notes to the 2005 Tenth Circuit Pattern Jury Instruction 2.05, Martinez-Morel "did not analyze or approve the ['voluntarily and knowingly was found in'] instruction, and it ultimately held that the *mens rea* element of the offense can be satisfied by showing that the defendant had 'the intent to do the act of entering the country.'" Id. at 1240 n.4 (quoting Martinez-Morel, 118

11

F.3d at 717). But the defendant in Hernandez-Hernandez only challenged the district court's ruling as to his voluntary intoxication defense and the case did not proceed to trial. As a result, "[w]hether there may be some additional way of satisfying the *mens rea* associated with Section 1326's 'found in' provision—such as by simply proving that the defendant knew he or she was physically within the United States—[wa]s not before us." Id. at 1240 n.4. Thus, just as we did in Martinez-Morel, we left the "knowingly found" instruction unreviewed.

Adding further complication, as the district court in this case noted, the third element of the then 2011 proposed Tenth Circuit Pattern Jury Instruction 2.05 reads "the defendant [knowingly entered] [knowingly attempted to enter] or [was found in] the United States[,]" appearing to suggest the Government need not prove any mens rea when a defendant is charged with being found in the United States.[3] Curiously, the instruction's comment asserts it "is patterned on the instruction approved in United States v. Martinez-Morel, 118 F.3d 710 (10th Cir. 1997) and modified to clarify that the 'knowingly' requirement in the third element does not pertain to being found in the United States[,]" citing Hernandez-Hernandez. But Martinez-Morel did not analyze, let alone approve, the instruction the district court gave with regard to Section 1326's "found in" provision—it merely quoted it. 118 F.3d at 713; Hernandez-Hernandez, 519 F.3d at 1239–40 n.4. And, regardless, the instruction in

---

[3] The proposed 2011 Tenth Circuit Pattern Jury Instructions became effective May 5, 2011.

Martinez-Morel informed the jury the Government must prove the defendant "was . . . deported; and who thereafter *voluntarily and knowingly was found in* the United States." 118 F.3d at 713 (emphasis added). Clearly, the allegedly approved instruction in Martinez-Morel did not omit intent as to the Section 1326(a) crime of being "found in the United States." Hernandez-Hernandez similarly did not hold that no element of intent is associated with the Section 1326 offense of being "found in United States." We simply commented that the "knowingly found" instruction was unclear and not approved by Martinez-Morel. Nonetheless, we reiterated that "the *mens rea* required to secure a Section 1326 conviction for being unlawfully 'found in' the United States[,]" though "limited[,]" exists, and is satisfied by proving the defendant's "'intent to do the act of entering the country.'" 519 F.3d at 1239 (quoting Martinez-Morel, 118 F.3d at 717).

## C.

We can dodge this "knowingly" question no longer. In contrast to Martinez-Morel and Hernandez-Hernandez, Defendant in this case requested a "knowingly found" instruction and the district court refused to give it. Defendant now protests that the district court's failure to instruct the jury as to any mens rea violated his constitutional rights and does not comport with our interpretation of Section 1326.

As our discussion makes clear, we have long held that to secure a conviction under Section 1326's "found in" provision, the Government must prove the defendant acted only with the "'intent to do the act of entering the country.'" Hernandez-

13

Hernandez, 519 F.3d at 1239 (quoting Martinez-Morel, 118 F.3d at 717).[4]  Neither

the Government nor Defendant have provided any persuasive reason to reconsider

that longstanding conclusion.  In fact, the Government acknowledges it bore the

burden of proving Defendant had "'the intent to do the act of entering the

[4] To our knowledge, every circuit to have considered Section 1326 has agreed that it does not require proof the defendant intended to break the law, only that he or she intended to reenter the United States.  See United States v. Carlos-Colmenares, 253 F.3d 276, 278 (7th Cir. 2001); United States v. Guzman-Ocampo, 236 F.3d 233, 238–39 (5th Cir. 2000); United States v. Martus, 138 F.3d 95, 97 (2d Cir. 1998); United States v. Gonzalez-Chavez, 122 F.3d 15, 17–18 (8th Cir. 1997); United States v. Henry, 111 F.3d 111, 114 (11th Cir. 1997); United States v. Soto, 106 F.3d 1040, 1041 (1st Cir. 1997); United States v. Espinoza-Leon, 873 F.2d 743, 746 (4th Cir. 1989); United States v. Hussein, 675 F.2d 114, 116 (6th Cir. 1982); Pena-Cabanillas v. United States, 394 F.2d 785, 789–90 (9th Cir. 1968), abrogated on other grounds by United States v. Arnett, 353 F.3d 765 (9th Cir. 2003) (en banc). How courts have phrased that intent with regard to being found in the United States varies.  See e.g., United States v. Salazar-Gonzales, 458 F.3d 851, 856–57 (9th Cir. 2006) ("Because 'knowledge' is a separate element of the 'found in' offense that, like voluntariness, the government must prove beyond a reasonable doubt, we hold that the district court erred in refusing to instruct the jury on the elements of knowledge and voluntary entry."), overruled on other grounds by Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527 (2009); Guzman-Ocampo, 236 F.3d at 237 ("A general intent *mens rea* under § 1326, then, merely requires that a defendant reenter the country voluntarily."); Gonazalez-Chavez, 122 F.3d at 18 ("[I]f a defendant voluntarily does the forbidden act [(reenters the United States without express permission from the Attorney General)], the law implies the intent." (internal quotations omitted)); Espinoza-Leon, 873 F.2d at 746 (concluding that a conviction for being found in the United States "under § 1326 requires proof merely of a voluntary act by defendant"); Ninth Circuit Model Criminal Jury Instruction 9.6 (2010) (stating "the defendant knowingly and voluntarily reentered the United States"); Eleventh Circuit Pattern Criminal Jury Instruction 97 (2010) (indicating "the Defendant [knowingly reentered] [was found to be voluntarily back in] the United States"); Fifth Circuit Pattern Criminal Jury Instruction 2.05 (2001) (providing "defendant knowingly entered [was found in] the United States" and further explaining "[t]he government must show that the defendant had the general intent to reenter, i.e., he is here voluntarily").

14

country[,]'" which it claims it did so prove. Aple. Br. at 39 (quoting Hernandez-Hernandez, 519 F.3d at 1239). Nonetheless, it seems to believe the district court need not have instructed the jury as to that intent element.

Defendant's argument is equally unpersuasive. Defendant contends that Flores-Figueroa stands for the proposition that "[u]nless obvious from the statutory text, such *mens rea* or scienter requirement should apply to all the elements [of a charged crime]." Aplt. Op. Br. at 19. The statute the Supreme Court interpreted in Flores-Figueroa criminalized "*knowingly* transfer[ring] . . . *a means of identification of another person*." 129 S. Ct. at 1888 (quoting 18 U.S.C. § 1028A(a)(1)). "The question [was] whether the statute requires the Government to show that the defendant *knew* that the 'means of identification' he or she unlawfully transferred . . . in fact, belonged to another person." Id. Given ordinary English grammar and typical interpretation of a criminal statute, the Court concluded "knowingly" in the statute in question applied to each element, including "means of identification." Id. at 1890–93. Defendant's reliance upon Flores-Figueroa is unavailing for at least one obvious reason. Section 1326's statutory text lacks *any* mention of a mens rea requirement for courts to apply to all its elements. Instead, courts have inferred that Section 1326(a) requires the Government prove the defendant acted solely with the intent to enter the country to "prevent[] one from being liable under § 1326 if he crossed the border involuntarily." Guzman-Ocampo, 236 F.3d at 237; see Carlos-Colmenares, 253 F.3d at 278 ("Intent to reenter is an element—it is hardly likely that

15

Congress would have made it a crime to be transported involuntarily to the United States, say by an airplane hijacker—but not intent to reenter without the requisite permission.")

Thus, the district court correctly refused to instruct the jury it must find Defendant possessed any intent as to the alienage, deportation, or authorization elements of Section 1326. But, our precedent dictates it did err in refusing to instruct the jury that the Government must prove Defendant acted with the limited "intent to do the act of entering the country." Martinez-Morel, 118 F.3d at 717; Hernandez-Hernandez, 519 F.3d at 1239. We, however, whole-heartedly agree with our Hernandez-Hernandez and district court colleagues that "knowingly found" is a confusing way to phrase "the intent to do the act of entering the country." Martinez-Morel, 118 F.3d at 717. The 2005 Tenth Circuit Pattern Jury Instruction 1.37 defines "knowingly" to "mean[] that the act was done voluntarily and intentionally, and not because of mistake or accident." "Knowingly entered" properly conveys that the Government may secure a conviction under Section 1326 by proving the defendant had the intent to do the act of entering the country because "knowingly" describes the person doing the entering. The phrase, therefore, comports with our statement in Miranda-Enriquez that to prove the defendant intended to reenter the United States, the Government must show "that the defendant willfully and knowingly reentered the United States . . . ." 842 F.2d at 1212. By that same token, however, "knowingly found" arguably speaks to the intent of the person doing the finding of

16

the defendant, saying nothing about the intent of the person found—the defendant. Of course, we are presently concerned with the state of mind of the person found, not the finder.[5]

As the district court noted, "knowingly found" could also be read to mean the person found must know that he was found or discovered by authorities, which we have never held Section 1326's "found in" provision to require. Our precedent, instead, establishes that the Government must prove Defendant acted only with the limited intent to reenter the United States to secure a conviction for being found in the United States in violation of Section 1326. So, deleting "knowingly" altogether from the third element without replacing it with some other intent element does not satisfactorily resolve the issue presented. The district court should have made clear to the jury that the Government must prove beyond a reasonable doubt that

---

[5] We have explained that in the context of Section 1326 "found" means the government employee or entity who discovered the defendant knows or reasonably could know certain facts.

> A defendant is "found" for this purpose when the government knows, or could have known through the exercise of diligence typical of law enforcement, the following: (1) the defendant is a prior deportee, (2) the defendant is illegally present in the United States (i.e., the defendant is an illegal alien), and (3) the defendant's whereabouts.

United States v. Villarreal-Ortiz, 553 F.3d 1326, 1330 (10th Cir. 2009). Defining when an alien was "found" has obvious importance in determining issues of venue, statutes of limitation, and sentencing. See e.g., id.; United States v. Hernandez-Noriega, 544 F.3d 1141 (10th Cir. 2008); United States v. Hernandez, 189 F.3d 785 (9th Cir. 1999); United States v. Rivera-Ventura, 72 F.3d 277 (2d Cir. 1995). But this appeal involves none of those issues. Instead, we are solely concerned with Defendant's state of mind.

17

Defendant reentered the United States with the intent to do so in order to find him guilty of Section 1326's "found in" offense.[6] This the court failed to do.

## D.

On the facts of this case, however, the district court's error worked no reversible harm. Defendant admitted in a sworn statement that he illegally reentered

_____

[6] Like the Hernandez-Hernandez court, we leave for another day "[w]hether there may be some additional way of satisfying the *mens rea* associated with Section 1326's 'found in' provision—such as by simply proving that the defendant knew he or she was physically within the United States." 519 F.3d at 1240 n.4. The Government relies on that aside in Hernandez-Hernandez to suggest that it need only prove Defendant knew he was physically within the United States (but it also hedges its bet by arguing it proved Defendant had the intent to do the act of entering the country), without providing any other reason to conclude that is correct. We acknowledge the possibility that an alien may involuntarily or unintentionally reenter the United States, but thereafter voluntarily and intentionally choose to remain in the United States unlawfully. But, for reasons described herein, that factual scenario is not before us. Moreover, we may have already foreclosed the possibility of determining an alien's intent at the time he is found for the purposes of conviction under Section 1326's "found in" provision. When a previously deported alien voluntarily reentered illegally, but was thereafter prevented from leaving the United States by virtue of being imprisoned on unrelated charges, we explained "'[a]lthough the act of returning to the United States must be voluntary, it is not relevant whether an alien's continued presence in the United States was voluntary at the moment of discovery.'" Hernandez-Noriega, 544 F.3d at 1143 (quoting United States v. Dixon, 327 F.3d 257, 259 (3d Cir. 2003)); see also United States v. Ortiz-Villegas, 49 F.3d 1435, 1437 (9th Cir. 1995) ("We also reject [the defendant's] argument that he did not have the required intent to be 'found in' the United States because he was involuntarily incarcerated within United States' borders at the time he was located. . . . Intent to be in the United States at the moment he or she is located is not necessary."). Thus, we do not expand upon or contradict our established precedent's conclusion that the intent to reenter the United States satisfies the limited intent required by Section 1326's "found in" provision.

18

the United States without permission after his last deportation by walking across the border in Tucson, Arizona in 2008. Furthermore, we, along with other circuits, have recognized "that an alien's presence in the United States gives rise to a natural, common sense inference that his or her presence was intentional in the very limited, Section 1326 sense." Hernandez-Hernandez, 519 F.3d at 1241; see also Quintana-Tores, 235 F.3d at 1200 ("[A] reasonable juror may well infer that the alien had the intention to be here when the alien is discovered at any location in the country other than the border."). Defendant was found in Kansas, a considerable distance from the United States-Mexico border, giving rise to the reasonable inference that he intended to reenter the United States. At no point has Defendant provided any evidence to suggest he reentered the United States against his will or without his knowledge. The only evidence presented to the jury demonstrated Defendant acted with the limited intent necessary to support a conviction under Section 1326's "found in" provision—the intent to do the act of reentering the country, *i.e.* that he voluntarily and intentionally reentered the United States. Miranda-Enriquez, 842 F.2d at 1212. Therefore, we conclude the court's error was harmless because we find "beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error." Neder, 527 U.S. at 17.

## III.

We next turn to Defendant's contention that the Government did not prove his

19

alienage. Defendant concedes the Government proved he was not a United States citizen but contends the Government did not meet its burden of proving he was an alien at the time he is alleged to have committed the offense in the indictment—August 31, 2009—because it failed to prove he was not a United States national at that time. Aplt. Op. Br. at 16. We review challenges to the sufficiency of the evidence supporting a jury's verdict de novo, viewing the evidence in the light most favorable to the Government. United States v. Parker, 553 F.3d 1309, 1316 (10th Cir. 2009). "We will only overturn a guilty verdict on sufficiency grounds if no reasonable juror could have reached such a verdict on the evidence presented." Id.

Pursuant to 8 U.S.C. § 1326(a), the Government bore the burden of proving Defendant was an alien. Section 1101(a)(3) of the same title defines an alien as "any person not a citizen or national of the United States." In turn, Section 1101(a)(22) defines "national of the United States" as "(A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States." In United States v. Jimenez-Alcala, 353 F.3d 858, 861 (10th Cir. 2003), we explained:

> Traditionally, the term "national of the United States," when applied to non-citizens, referred to persons born in territories of the United States, a category that has almost become obsolete. . . . "Nationality and citizenship are not entirely synonymous; one can be a national of the United States and yet not a citizen. The distinction has little practical impact today, however, for the only remaining noncitizen nationals are residents of American Samoa and Swains Island."

20

(quoting Miller v. Albright, 523 U.S. 420, 467 n.2 (1998) (Ginsburg, J., dissenting)). We therefore adopted, without repeating its analysis, the Ninth Circuit's conclusion "that 'the term "national," when used to describe non-citizens, refers only to those born in territories of the United States.'" Id. (quoting Perdoma-Padilla v. Ashcroft, 333 F.3d 964, 968 (9th Cir. 2003)); see also Omolo v. Gonzales, 452 F.3d 404, 408–09 (5th Cir. 2006); Sebastian-Soler v. U.S. Att'y. Gen., 409 F.3d 1280, 1286 (11th Cir. 2005). Consequently, we upheld the following instruction on the definition of a "national" for purposes of Section 1326:

> The term "alien" means any person who is not a citizen or national of the United States. The term "national of the United States" means a person who, though not a citizen of the United States, owes permanent allegiance to the United States. . . . [O]ne does not become a "national of the United States" simply by residing in the United States for a lengthy period of time. The definition "national of the United States" also does not include a person who illegally enters the United States and subjectively considers himself a person who owes permanent allegiance to this country. Examples of "nationals of the United States" include residents of American Samoa and Swains Island. . . .

Jimenez-Alcala, 353 F.3d at 860. In the instant case, after defense counsel stated in its closing argument that the Government had failed to prove that Defendant was not a national of the United States, the district court read the above instruction from Jimenez-Alcala to the jury.

Despite our explanation in Jimenez-Alcala, defense counsel seemed to suggest at trial and at oral argument one might "owe[] permanent allegiance to the United States" without being a citizen or having been born in select territories of the United

21

States. Such an argument overlooks the fact that "owes permanent allegiance to the United States" is essentially a term of art. The Second Circuit explained "national":

> [W]as originally intended to account for the inhabitants of certain territories—territories said to "belong to the United States," including the territories acquired from Spain during the Spanish-American War, namely the Philippines, Guam, and Puerto Rico[ ]in the early twentieth century, who were not granted U.S. citizenship, yet were deemed to owe "permanent allegiance" to the United States and recognized as members of the national community in a way that distinguished them from aliens. The term "non-citizen national" developed within a specific historical context and denotes a particular legal status. The phrase "owes permanent allegiance" in § 1101(a)(22)(B) is thus a term of art that denotes a legal status for which individuals have never been able to qualify by demonstrating permanent allegiance, as that phrase is colloquially understood.

Marquez-Almanzar v. I.N.S., 418 F.3d 210, 218 (2d Cir. 2005) (internal citations omitted). Again, the only people to whom this term of art presently applies are those from American Samoa and Swains Island. See 8 U.S.C. §§ 1408, 1101(a)(29); see also T. Alienikoff, D. Martin, & H. Motomura, Immigration: Process and Policy 30 (6th ed. 2008) ("As of today, however, the regular *jus soli* rules are in effect in all territories except American Samoa and Swains Island—meaning that children now born in any U.S. territorial possessions except those two become full citizens at birth.").

Because Defendant admits he is not a United States citizen, the Government need only prove Defendant is not a noncitizen national. As our discussion above makes clear, birth in certain United States territories is the only path to noncitizen national status. At trial, the Government introduced into evidence Defendant's

22

sworn statement, given on August 31, 2009, in which he said he was a citizen of Mexico and that he was born in Mexico. We feel safe in concluding that generally one cannot be born in two places. And, one's place of birth does not change over the course of time (absent alteration of a place's boundaries—a factual scenario not presented here). Because Defendant admitted he was born in Mexico, a jury could reasonably conclude he was not born in the United States or in the only two United States territories in which birth does not accord citizenship but only national status: American Samoa and Swains Island. As a result, the Government presented sufficient evidence from which a reasonable jury could conclude Defendant was neither a citizen nor a national of the United States at the time alleged in the indictment.

IV.

Having dispensed with the elements of conviction, we now turn to the evidence. Over Defendant's objection, the district court permitted the Government to introduce his 1997 conviction for illegal reentry pursuant to Fed. R. Evid. 404(b). Upon the admission of that evidence, the district court instructed the jury that it may only consider that evidence "as it bears on this Defendant's identity, intent, knowledge, and for no other purpose. The fact that he may have previously committed a crime similar to the one charged in this case does not necessarily mean that he committed the crime charged in this case." ROA Vol. II at 49–50. Defendant argues no valid ground existed for the admission of his 1997 conviction; rather, the

23

Government introduced it to demonstrate Defendant's propensity to commit the crime charged, and that prejudicial effect overcame any of its probative value.

We consider the district court's evidentiary rulings pursuant to Fed. R. Evid. 404(b) for abuse of discretion. United States v. Mares, 441 F.3d 1152, 1156 (10th Cir. 2006). But even if we conclude the district court abused its discretion, such "error is considered harmless unless it had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect." United States v. Becker, 230 F.3d 1224, 1233 (10th Cir. 2000) (internal quotations omitted). "'Where the evidence against a defendant is overwhelming, any error in mentioning a defendant's criminal record is harmless.'" Id. (quoting United States v. Sloan, 65 F.3d 861, 865 (10th Cir. 1995)). In a sworn statement, Defendant admitted he was a citizen of and born in Mexico, had been previously deported, and last entered the United States without permission by walking across the border in Tucson, Arizona in 2008. Therefore, Defendant's own statement provided sufficient proof of every element of Section 1326's offense of being "found in" the United States: Defendant (1) was an alien at or about the time alleged in the indictment (2) who had been deported (3) and subsequently reentered the United States with the intent to reenter the country (4) without permission. Because of this overwhelming evidence, any error or prejudice stemming from the admission of Defendant's prior conviction is harmless

24

V.

Lastly, Defendant contends that the Government's rebuttal closing argument improperly shifted the burden to Defendant and included other comments so prejudicial as to require reversal. Defendant points to the Government's stating that "there is no evidence that the Defendant is a national of the United States. Only evidence that he is a citizen of Mexico" and claiming Defendant's defense theory amounts to a red herring and speculation. ROA Vol. II at 175–76. Defense counsel objected to this allegedly improper conduct at trial, but the district court overruled his objections.

We review allegations of prosecutorial misconduct de novo. United States v. Pulido-Jacobo, 377 F.3d 1124, 1134 (10th Cir. 2004). In conducting that review, we first decide whether the conduct was improper and then, if so, whether the Government has demonstrated that error was harmless beyond a reasonable doubt. Id. "To determine whether prosecutorial misconduct is harmless, 'we must look to the curative acts of the district court, the extent of the misconduct, and the role of the misconduct within the case as a whole.'" Id. (quoting United States v. Martinez-Nava, 838 F.2d 411, 416 (10th Cir. 1988)).

In this case, "'[w]e need not decide whether [these allegations] represent prosecutorial misconduct, because we are satisfied that' any error was harmless." Id. (quoting Martinez-Nava, 838 F.2d at 416). First, the district court instructed the jury multiple times throughout the trial that Defendant was innocent until the

25

Government carried its burden of proving he was guilty beyond a reasonable doubt. Second, the controverted comments constituted only a small portion of the Government's entire closing argument. Lastly, as discussed above, the Government presented substantial evidence at trial to support the jury's guilty verdict. Consequently, even if the Government's comments constituted prosecutorial misconduct of a constitutional magnitude, we conclude they were harmless error beyond a reasonable doubt.

For the reasons given herein, we AFFIRM the jury's verdict. As a result, we also AFFIRM the sentence imposed in Defendant's supervised release case that was based upon the jury's verdict.

No. 10-3066, -3067, *United States v. Sierra-Ledesma.*

**KELLY**, Circuit Judge, concurring.

The district court instructed the jury on the third element that "defendant was found in Sedgwick County, Kansas on or about August 31, 2009," although Mr. Sierra-Ledesma requested an instruction that "the defendant knowingly was found in the United States on the date alleged in the indictment." In pertinent part, the Tenth Circuit Pattern Jury Instruction 2.05 (2005) then required that "the defendant knowingly was found in the United States."

The 2005 instruction on the elements appears similar to the Fifth Circuit Pattern Jury Instruction 2.05 (2001) which required: "That thereafter the defendant knowingly was found in the United States." In United States v. Hernandez-Hernandez, 519 F.3d 1236, 1239, 1239-40 n.4 (10th Cir. 2008), we expressed doubt about the "knowingly was found" formulation but concluded that any mens rea could be satisfied by a showing that the defendant intended to do the act of entering the country. Id. (citing United States v. Martinez-Morel, 118 F.3d 710, 717 (10th Cir. 1997)). Thus, it seems apparent that an instruction that "the defendant was found in the United States having re-entered voluntarily" would suffice and ensure that a defendant could not be convicted "if he crossed the border involuntarily." See United States v. Guzman-O'Campo, 236 F.3d 233, 237 (5th Cir. 2000); United States v. Quintana-Torres, 224 F.3d 1157, 1159 (9th Cir. 2000).

Thus, the statement in the commentary to the 2011 Pattern Jury Instruction 2.05 that the "knowingly" element does not pertain to being found in the United

States, while literally correct given the prior formulation, should be supplemented with the explanation that the defendant must have re-entered voluntarily (or the like). See Guzman-O'Campo, 236 F.3d at 238-39; United States v. Tovias-Marroquin, 218 F.3d 455, 457-58 (5th Cir. 2000); 11th Cir. Pattern Jury Instruction 97 (2010) ("the Defendant [knowingly reentered] [was found to be voluntarily back in the United States]"); 9th Cir. Pattern Jury Instruction 9.8 (2010) ("thereafter, the defendant voluntarily entered the United States"). I agree with the court that the failure to so instruct was harmless error.