[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 19, 2005
THOMAS K. KAHN
CLERK

No. 03-12934

BIA No. A18-229-818

DAVID SEBASTIAN-SOLER,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

Petition for Review of a Decision
of the Board of Immigration Appeals

(May 19. 2005)

Before EDMONDSON, Chief Judge, WILSON, Circuit Judge, and RESTANI*,
Judge.

---

*Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by
designation

PER CURIAM:

Petitioner David Sebastian-Soler, a Cuban immigrant and resident alien, appeals his removal order issued by the Immigration Judge and summarily affirmed by the Board of Immigration Appeals. Petitioner argues that he is no alien and thus not removable under 8 U.S.C. § 1227(a)(2)(A)(iii) . Because we conclude Petitioner is an alien, we dismiss the appeal.

Background

Petitioner immigrated from Cuba to the United States in 1969, obtained permanent resident status in 1974 and applied to file for naturalization in 1987. As part of his preliminary examination he appeared in March 1988 before Immigration Officer Finnerty, acting in her capacity as an INS Designated Examiner. At this proceeding Petitioner signed a petition for naturalization[1] that included an oath affirming the truthfulness of the application's contents and Petitioner's intent to take an oath of allegiance should his application be granted. On the back of the form was the oath of allegiance for citizenship, which

[1] INS Form N-405.

2

Petitioner also signed.[2]  Officer Finnerty then continued Petitioner's application pending receipt of additional documents she had requested.[3]  The INS[4] reviewed his application three times during the next two years and ultimately recommended it be denied because Sebastian had failed to submit all of the requested documents. In October 1990 Sebastian sent the remaining documents that Officer Finnerty had requested, and the INS recommended approval in March 1991.  Along with the requested documents, Petitioner sent an updated biographical information card containing his address, which had changed since his initial application was filed.

In June 1991 the INS mailed -- to his former address, the one he gave when he first applied -- a notice to Petitioner informing him of the final hearing on his petition before a district court in which he was to participate and to take the oath of citizenship.  Petitioner never received the notice, and it was returned to the INS. In May 1992 Petitioner began a criminal career that lasted until November 1995

---

[2]Due to religious scruples, Petitioner signed a modified oath of allegiance: one that omitted the commitments to bear arms on behalf of the Country and to perform non-combatant service in the military.

[3]Officer Finnerty requested documentation on Petitioner's affiliation with the Jehovah's Witnesses, of which he professed to be a member.  Also, due to Petitioner's poor driving record, Finnerty requested official driving record reports for further evaluation.

[4]The INS ceased to exist as an independent agency on 1 March 2003, when its functions were assigned to the newly formed Department of Homeland Security.  Because the underlying events at issue in this appeal occurred before the INS's dissolution, we will refer to that agency as the INS.

and culminated in his seven-count felony conviction[5] in May 1997. The INS twice more sent notices to Petitioner's previous address that were returned without his receiving them: one on 28 January 1993 noticing another final hearing on his petition and one on 22 September 1993 noticing a hearing before the district court to consider the INS's recommendation that his petition be denied for lack of prosecution. In December 1993 the district court denied Petitioner's application.

After Petitioner in October 1990 sent the last of the required documents to the INS to complete his application, the record indicates that he did not inquire about the status of his naturalization petition until over nine years later: in June 2000 while he was serving a 77-month sentence for his convictions. Petitioner (in December 2001 when he received documents from the INS in response to his June 2000 FOIA request) learned of the mailing error: the noncurrent address. Upon Petitioner's release in September 2002, the INS charged Petitioner under 8 U.S.C. § 1227(a)(2)(A)(iii)[6] and initiated removal proceedings.

The IJ sustained the charge of removability, found Petitioner ineligible for relief or asylum, and ordered his removal to Cuba. On appeal the BIA summarily

---

[5]Petitioner was convicted under 18 U.S.C. § 371 (Conspiracy to transport, receive and sell stolen goods in Interstate and Foreign Commerce) and 18 U.S.C. § 2314 (Transportation of stolen goods in Interstate Commerce).

[6]Section 1227(a)(2)(A)(iii) establishes the commission of an aggravated felony as a condition for an alien's removal.

affirmed the IJ's decision, making it the final agency determination on the matter. Gonzalez-Oropeza v. United States Att'y Gen., 321 F.3d 1331, 1333 (11th Cir. 2003). Petitioner now appeals that decision. He contends that he is not subject to removal because he is either a citizen or a national of the United States.

## Standard of Review

We review de novo legal questions arising from claims of nationality. See 8 U.S.C. § 1252(b)(5) (vesting authority to decide nationality claims in courts of appeals);[7] see also Alwan v. Ashcroft, 388 F.3d 507, 510 (5th Cir. 2004).

Our review of final removal orders is strictly limited by 8 U.S.C. § 1252(a)(2)(C): "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section . . . 1227(a)(2)(A)(iii) . . . ."[8] Where our

---

[7]For us to decide Petitioner's nationality claim, no genuine issue of material fact can exist about the claim; otherwise, we must transfer the mater to the district court for resolution. 8 U.S.C. § 1252(b)(5)(A)-(B). A genuine issue of fact does exist about whether INS Officer Finnerty actually administered a modified oath of allegiance to Sebastian during his preliminary investigation. This fact, however, is not material: even had Petitioner taken the oath at that time, it would not satisfy the statutory prerequisite for citizenship that Petitioner take the oath of allegiance in "open court." See 8 U.S.C. § 1448(a) (1988).

[8]Because removal proceedings were commenced against Petitioner after 1 April 1997, the effective date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), IIRIRA's permanent rules apply to this case. See Fernandez-Bernal v. Att'y Gen. of the

review is limited by statutory conditions, "we retain jurisdiction to determine only whether these conditions exist." Brooks v. Ashcroft, 283 F.3d 1268, 1272 (11th Cir. 2002). Thus, if we determine that Petitioner is (1) an alien; (2) who is removable; (3) because he committed a criminal offense described in the statute, we must divest ourselves of jurisdiction to inquire further. Id. Despite this jurisdiction-stripping provision, our precedent says we also retain jurisdiction to consider substantial constitutional claims raised by Petitioner. Id. at 1273.

## Discussion

Petitioner only contests one condition of his removal -- that he is an alien -- by arguing alternatively that he is either a duly naturalized citizen or a national of the United States. Neither argument has merit.

## I. Petitioner is not a Citizen of the United States.

Petitioner first argues that he is a duly naturalized citizen of the United States. He says he is ineligible for removal, by virtue of his subscribing to the

United States, 257 F.3d 1304, 1306 n.1 (11th Cir. 2001).

6

oath of allegiance during his application process coupled with the fact that the INS later recommended his naturalization petition be granted. Because Petitioner has not met the statutory requirements for naturalization, this argument fails.

The law, at the time of Petitioner's application, vested in the judicial branch exclusive jurisdiction to naturalize persons. 8 U.S.C. § 1421(a) (1988). Before a court conferred citizenship on someone, the court had to conduct an examination of the applicant that included, among other things, an investigation of the applicant's moral character. Id. §§ 1443(a); 1447(a). At the time of Petitioner's application, the United States Attorney General was authorized to conduct the required preliminary examinations for the purpose of making the appropriate recommendations to naturalization courts. Id. § 1443(a). To accomplish this examination the Attorney General named INS employees as Designated Examiners who were empowered to take testimony and administer oaths in furtherance of these examinations. Id. § 1446(b). The recommendations resulting from the examinations were to be submitted to and considered by the court in its final determination of whether or not to confer citizenship. See id. § 1446(d).

If a court decided to confer citizenship, two requirements then had to be met. First, a final hearing on the petition must be held in open court. Id. § 1447(a). Second, the petitioner must take an oath of renunciation and allegiance

7

in open court. Id. § 1448(a). The only exception to either of these requirements -- available if the petitioner "is prevented by sickness or other disability from being in open court" -- is that the proceeding may be held "before a judge" in an alternate location. Id. §§ 1447(a); 1448(c) (emphasis added).

That Petitioner neither appeared before a judge for a final hearing on his petition nor took the oath of allegiance before a judge (in open court or elsewhere) is undisputed. Petitioner, nevertheless, asserts that he is a naturalized citizen, reasoning that, because the INS had at one time recommended his citizenship petition be granted and that because he had subscribed to the oath of allegiance at a preliminary examination before an INS officer, he has met all the requirements for naturalization. Petitioner specifically argues that INS Officer Finnerty was functioning as a deputy clerk of court when she administered the oath during the preliminary examination, thus satisfying the "open court" requirement. This argument fails for several reasons.

First, nothing in the record indicates that Officer Finnerty was, in fact, purporting to act as a deputy clerk of court when administering the oath to Petitioner.[9] More important, nothing indicates Officer Finnerty was authorized by

---

[9]At the bottom of the reverse side of INS Form N-405, where a version of the oath of allegiance is contained, two signature lines appear on either side of the document. One says, "WHEN OATH ADMINISTERED BY DESIGNATED EXAMINER;" the other says, "WHEN OATH

law to do so. A deputy clerk of court is an employee of the judicial branch of government. Officer Finnerty was an employee of the executive branch.

Second, even if Officer Finnerty administered the oath to Petitioner, it was not done in open court. The statute only authorized one exception to the oath's "open court" requirement: that if the petitioner was unable to appear in open court due to sickness or disability, the oath was to be taken "before a judge of the court at such place as may be designated by the court." 8 U.S.C. § 1448(c) (1988). Petitioner does not assert a disability that kept him from open court. Even if he had, the statute only excepts the locality of the oath-taking, not the manner in which it is to be taken: that is, before a "judge." The statutory language makes clear that an oath administered in an INS office by an INS officer -- before the INS officer has even completed a preliminary investigation or made any recommendations -- fails to fit into this lone and narrow exception.[10]

_____

ADMINISTERED BY CLERK OR DEPUTY CLERK OF COURT." On Petitioner's application Officer Finnerty signed on the line for Designated Examiners.

[10]That the final oath of allegiance is a distinct, and later-in-time, process from the application and preliminary examination process is a concept that is neither novel nor surprising; and a concept that runs throughout this Country's statutory governance of naturalization. See, e.g., 8 C.F.R. § 316.10(a)(1) ("An applicant for naturalization bears the burden of demonstrating that, during the statutorily prescribed period, he or she has been and continues to be a person of good moral character. This includes the period between the examination and the administration of the oath of allegiance.") (emphasis added).

9

Third, regardless of whether the INS had at one time recommended Petitioner for citizenship or whether Petitioner had taken the oath of allegiance, the authority to confer citizenship upon Petitioner rested exclusively with the judicial branch. The district court in this case never conferred citizenship on Petitioner.

Because Petitioner has failed to meet the statutory requirements for naturalization, we readily conclude that Petitioner is no citizen of the United States.

II. Petitioner is not a National of the United States.

Petitioner next argues that he is ineligible for removal because he is no alien, but rather a national of the United States, by virtue of his asserted permanent allegiance to this Country. Petitioner points mainly to his longtime residence and application for citizenship as evidence of this permanent allegiance.[11] Because we

---

[11]Petitioner also asserts that, as part of the totality of the circumstances to be considered in assessing his allegiance to the Country, his moral character should be viewed at the point in time at which he either applied for citizenship or at which his application was recommended favorably by the INS to the courts. This view in effect eliminates consideration of the aggravated felonies Petitioner committed beginning after the first, but before the second, notice of his final hearing. Regardless of when he was convicted, because Petitioner committed these aggravated felonies before taking his final oath (which was never done), this argument is unavailing. See Unites States v. Jean-Baptiste, 395 F.3d 1190, 1192 & n.2 (11th Cir. 2005).

10

conclude that a person can become a national of the United States only through birth or naturalization, Petitioner's argument fails.

Congress has defined a "national of the United States" to mean either a citizen of the United States or "a person who, though not a citizen of the United States, owes permanent allegiance to the United States." 8 U.S.C. § 1101(a)(22). This definition, however, does not set out the conditions by which one comes to owe this permanent allegiance. Congress, under Title 8 of the Unites States Code in Subchapter III of Chapter 12, has set out the routes to nationality and naturalization in this Country. There are two. Part I of the Subchapter governs nationality at birth and collective naturalization. 8 U.S.C. §§ 1401-1409. Part II governs nationality through naturalization. 8 U.S.C. §§ 1421-1458. Under the terms of the relevant statutory scheme, then, the only methods Congress has made available by which a person may attain the status of a national of the United States (other than nationality conferred by Congress through its act or acquisition of territories) are by birth or naturalization. We see no other avenue to nationality or citizenship supplied by Congress in the statute, and we decline to create one.

All United States citizens are United States nationals, but not all nationals are citizens. Because Petitioner is not a naturalized citizen, the only provision under which he could possibly be deemed a national is 8 U.S.C. § 1408:

11

"Nationals <u>but not citizens</u> of the Unites States at birth."  (Emphasis added).  That provision supplies four categories of persons deemed to be nationals:

> Unless otherwise provided in section 1401 of this title, the following shall be nationals, but not citizens, of the United States at birth:
>
> (1) A person born in an outlying possession of the United States on or after the date of formal acquisition of such possession;[12]
>
> (2) A person born outside the United States and its outlying possessions of parents both of whom are nationals, but not citizens, of the United States, and have had a residence in the United States, or one of its outlying possessions prior to the birth of such person;
>
> (3) A person of unknown parentage found in an outlying possession of the United States while under the age of five years, until shown, prior to his attaining the age of twenty-one years, not to have been born in such outlying possession; and
>
> (4) A person born outside the United States and its outlying possessions of parents one of whom is an alien, and the other a national, but not a citizen, of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a [prescribed] period . . . .

8 U.S.C. § 1408.  Petitioner fits into none of these categories.  Accordingly, we conclude that Petitioner is no national of the United States.

We note that our conclusion that one may become a national only by birth in a United States territory or by completing the naturalization process after birth

---

[12]The only people currently holding this status seem to be people from American Samoa and Swains Island.  <u>See</u> 8 U.S.C. § 1101(a)(29).

comports with the historical meaning of the term "national" as well as the statutory and regulatory context governing aliens and nationality. In <u>Perdomo-Padilla v. Ashcroft</u>, 333 F.3d 964 (9th Cir. 2003), <u>cert. denied</u>, 124 S.Ct. 1041 (2004), the Ninth Circuit conducted a thorough and well-reasoned analysis of these corroborative factors. We think that analysis is persuasive and, because we reach the same result, see no reason to duplicate it here. In addition to the Ninth Circuit, we join a number of other circuits (and the Board of Immigration Appeals) that have either explicitly come to the same conclusion or have impliedly adhered to the same view. See <u>United States v. Jimenez-Alcala</u>, 353 F.3d 858, 861 (10th Cir. 2003) (explicit); <u>Salim v. Ashcroft</u>, 350 F.3d 307, 310 (3d Cir. 2003) (explicit); <u>Oliver v. INS</u>, 517 F.2d 426, 427-28 & n.3 (2d Cir. 1975); <u>In re Moises Navas-Acosta</u>, 23 I.&N. Dec. 586, 586-88 (BIA 2003); <u>see also Igartua De La Rosa v. United States</u>, 229 F.3d 80, 87 n.12 (1st Cir. 2000) (Torruella, J., concurring) ("The only persons currently holding [national] status are residents of American Samoa and Swains Island.")

The circuit decision on which Petitioner mainly relies is <u>United States v. Morin</u>, 80 F.3d 124, 126-27 (4th Cir. 1996).[13] <u>Morin</u> is a federal sentencing

---

[13]Petitioner also attempts to rely on decisions from the Fifth and Eighth Circuits in support of his position. The Fifth Circuit has explicitly reserved the question. <u>Alwan v. Ashcroft</u>, 388 F.3d 507, 513 (5th Cir. 2004). The Eighth Circuit rendered a decision tending to corroborate our conclusion

13

guidelines case in which the Fourth Circuit construed the federal murder-for-hire statute and, in its conclusion that the defendant's intended victim qualified as a national, noted that "an application for citizenship is the most compelling evidence of permanent allegiance to the United States short of citizenship itself." Id. at 126. That statement was offered with no explanation or citation to authority. As such, we -- like the Third, Ninth and Tenth Circuits -- find Morin wholly unpersuasive on the issue before us.

## Conclusion

Because we conclude that Petitioner is an alien as a matter of law and that he raises no meritorious constitutional claims in conjunction with his removal

---

here today. See Carreon-Hernandez v. Levi, 543 F.2d 637, 638 (8th Cir. 1976) (adopting reasoning of district court decision below, Carreon-Hernandez v. Levi, 409 F. Supp. 1208, 1210 (D. Minn. 1976), rejecting petitioner's argument that long residence in United States sufficed for permanent allegiance and deciding that petitioner was deportable "because she didn't go through the naturalization process"). Accordingly, the law of neither circuit is helpful to Petitioner here.

14

hearing,[14] our jurisdiction under 8 U.S.C. § 1252(a)(2)(C) to review the IJ's

removal order proceeds no further.  Accordingly, Petitioner's appeal is dismissed.

DISMISSED.

---

[14]Petitioner asserts that the district court's denial of his naturalization petition violated his procedural due process rights because, as a result of the INS's failed notices, Petitioner had no opportunity to be heard at that proceeding.  We acknowledge that "[d]ue process requires that aliens be given notice and opportunity to be heard in their removal proceedings."  Fernandez-Bernal, 257 F.3d at 1311 n.8.  (emphasis added).  And we will assume, without deciding, that a naturalization proceeding could be so integral to a removal proceeding to warrant our review of constitutional violations alleged to have taken place in the naturalization proceeding.  But, even if he could state a cognizable constitutional claim, we conclude that Petitioner has a redressability problem:  even if we directed the reopening of his naturalization proceeding, Petitioner could not now obtain the relief he seeks because, due to his own conduct, he is now statutorily ineligible for citizenship by virtue of his having committed aggravated felonies.  8 U.S.C. §§ 1101(f)(8), 1427(a); cf. Zayed v. United States, 368 F.3d 902, 903 (6th Cir. 2004) (affirming denial of naturalization petition on basis that district court "lacked the power to grant an effective remedy" due to petitioner's being statutorily ineligible for naturalization).

Petitioner's only claim of a due process violation within his removal proceedings has to do with the IJ's denial of his request to subpoena the reverse side of the INS Form N-405 that allegedly memorializes Petitioner's subscribing to the modified oath of allegiance during the course of his preliminary investigation.  This claim also fails.  We have considered that document and concluded that even if it proves, as Petitioner contends, Petitioner took the oath of allegiance at some point in the application process, the oath would fail to satisfy the statutory requirement that citizenship cannot be conferred on an applicant until that applicant has taken that oath in open court.  Thus, even if Petitioner could show a due process violation on account of no subpoena, he cannot show that he was substantially prejudiced.  See Ibrahim v. INS, 821 F.2d 1547, 1550 (11th Cir. 1987).

15