[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 13-11023
Non-Argument Calendar

————————————————

Agency No. A074-616-204

ST. DEVON ANTHONY COVER,
a.k.a. Devon Cover,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

————————————————

Petition for Review of a Decision of the
Board of Immigration Appeals

————————————————

(July 17, 2014)

Before HULL, WILSON and FAY, Circuit Judges.

PER CURIAM:

St. Devon Anthony Cover, pro se, petitions for review of the Board of Immigration Appeals's ("BIA") decision affirming the immigration judge's ("IJ") order removing him to Jamaica because of his drug conviction involving 1,000 kilograms of marijuana. Upon review of the record and consideration of the parties' briefs, we deny the petition.

## I. BACKGROUND

### A.     1988 Entry and 1999 Adjustment of Status

In 1988, Cover, a Jamaican citizen, entered the United States as a non-immigrant visitor. In 1999, Cover's status was adjusted to a lawful permanent resident.

### B.     2007 Conviction and Notice to Appear

In 2007, Cover pled guilty to conspiracy to possess with intent to distribute 1,000 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vii), 846. The district court sentenced Cover to 70 months' imprisonment. Cover did not appeal.[1]

As a result of his conviction, in May 2007, the Department of Homeland Security ("DHS") issued a Notice to Appear ("NTA"), charging Cover as a native and citizen of Jamaica who was removable for two reasons: (1) under INA

---

[1]In 2008, Cover did file a motion to vacate under 28 U.S.C. § 2255, but the sentencing court denied him relief. In 2013, Cover's habeas corpus petition was dismissed. Cover did not appeal either ruling.

2

§ 237(a)(2)(A)(iii), as an alien who had been convicted of an aggravated felony, and (2) under INA § 237(a)(2)(B)(i), as an alien who had been convicted of a controlled substance offense.  8 U.S.C. § 1227(a)(2)(A)(iii), (a)(2)(B)(i).  The NTA was not served, however, until 2011.

## C.    August 2011 IJ Hearing

At the August 2011 hearing in immigration court, Cover appeared pro se. The IJ asked Cover, "[A]re you from Jamaica, and you speak English?"  Cover responded, "Yes, sir."  Cover asked for additional time to prepare.  His hearing was rescheduled for October 27, 2011.

## D.    Cover's 2011 Motion for Termination of Removal Proceedings

Prior to the October 27 hearing, Cover, pro se, filed a "Motion for Termination of Removal Proceedings And Motion for Issuance of an Order Directing the Department of Homeland Security to Renew Expired Permanent Resident Card."  In the motion, Cover admitted that (1) he was a permanent resident, residing in the United States since 1988, and a noncitizen and (2) his permanent resident card expired in June 2009.  Cover requested that the IJ order the agency to renew his card.

Cover also acknowledged that he had pled guilty to a controlled substance offense and, as a result, was removable.  Cover argued that the government was estopped from removing him because it had induced Cover to plead guilty by

3

telling him that he would not be removed.  Cover alleged that the promise was made orally; it was not included in his written plea agreement.

Cover's attachments to the motion to terminate included: (1) several letters from Cover's family members asking that Cover not be removed to Jamaica, two of which stated that Cover's place of birth was Jamaica and (2) a letter to a prison official, at the correctional facility where Cover was incarcerated, requesting immigration law materials because, inter alia, he was a "deportable alien" and a "non-U.S. citizen[]."

## E.    Pre-October 27, 2011 Government Exhibits

Sometime prior to the October 27 hearing, the government filed two exhibits: (1) a Form I-213 Record of Deportable/Inadmissible Alien, indicating that Cover's place of birth and citizenship was Jamaica; and (2) a criminal judgment showing that Cover was convicted of the crime described in NTA.  A stamp on the judgment, by the U.S. District Court Clerk for the Middle District of Florida, certified the document as a "true and correct copy of the original."

## F.    October 27, 2011 Removal Order

At the October 27, 2011 hearing, the IJ asked Cover if he would admit the allegations in the NTA.  Cover admitted he was a convicted felon, but declined to answer further.

The IJ found Cover removable to Jamaica.  The government pointed out that "for the record . . . all of the matters contained in the NTA are addressed and admitted in some form in [Cover]'s motions that he's filed with the Court."

## G.    March 2012 BIA Appeal

Cover appealed to the BIA.  In March 2012, the BIA remanded Cover's case to the IJ for further proceedings.  The BIA noted that the IJ did not issue a separate oral or written decision setting forth his rationale for ordering Cover removed and therefore ordered the record returned to the IJ for preparation of a full decision. The BIA directed the IJ to determine "anew" whether Cover was removable as charged.

## H.    May 2012 Release from Prison and Request to Subpoena Witnesses

In May 2012, Cover finished his criminal sentence and was released to the custody of immigration officials.

In the immigration court, Cover filed a "request to Subpoena Witnesses," including the Assistant U.S. Attorney ("AUSA") involved in Cover's criminal case and Cover's former defense attorneys.  Cover's request alleged that these witnesses could attest to: (1) his cooperation with the government; and (2) the government's promise that he would not be removed if he pled guilty.

The IJ denied the subpoena request because Cover had not established that the evidence was essential to the instant proceedings.[2]

## I.    August 2012 Government Exhibits

Subsequently, in immigration court, the government filed several exhibits establishing that Cover was removable.  As to Cover's alienage, the exhibits included copies of: (1) the 2005 decision on Cover's Application for Naturalization, showing that the application was administratively denied due to poor moral character; (2) Cover's Jamaican passport, stating that he was born in Kingston, Jamaica; (3) a 1999 INS Memorandum of Creation of Record of Lawful Permanent Residence, listing Cover's country of birth as Jamaica; (4) a 1999 Application to Register Permanent Residence or Adjust Status on which Cover listed his country of birth as Jamaica; and (5) Cover's Birth Registration Form, showing he was born in Kingston, Jamaica.  Only the last document—the Birth Registration Form—was a certified copy.

As to Cover's criminal conviction, the government submitted a certified judgment of Cover's drug conspiracy conviction that was identical to the certified judgment it filed prior to the BIA's March 2012 remand.

## J.    September 6, 2012 Removal Hearing

---

[2]Cover later renewed his request to subpoena witnesses, which the IJ denied.

At a removal hearing on September 6, 2012, Cover refused to answer any allegations in the NTA and expressly invoked his Fifth Amendment privilege against self-incrimination. Cover did argue that he only pled guilty in exchange for not being removed and that his conviction was obtained in violation of his Fifth and Sixth Amendment rights.

Cover also orally moved to withdraw his October 5, 2011 motion to terminate removal proceedings, and the IJ granted the motion. Cover also expressly waived his right to apply for asylum, withholding of removal, or protection under the Convention Against Torture.

Cover objected to the government's August 2012 exhibits as evidence and argued that the documents were unauthenticated. The IJ admitted the evidence, noted Cover's objections, and stated that it would "give them the weight that it deems appropriate."

## K.    September 20, 2012 IJ Decision and Order of Removal

In his September 20, 2012 oral decision, the IJ found that the government's August 2012 exhibits, which the IJ found to be reliable, established Cover's removability. The IJ noted that Cover did not provide any testimony or documentation to contradict the evidence against him.

During the 2012 hearing, the IJ also determined that, (1) even if the government orally promised not to remove Cover, he had ample time to

7

collaterally attack his 2007 drug conviction and (2) thus any alleged promise by the government did not bar the removal proceedings. The IJ ordered Cover removed to Jamaica.

## L.    October 2012 to March 2013 BIA Appeal

In October 2012, Cover appealed the removal order to the BIA. Cover argued, inter alia, that the government's exhibits about his alienage and criminal conviction were unauthenticated, inadmissible, and insufficient to show removability.

In March 2013, the BIA affirmed. The BIA determined that Cover made several explicit references, in testimony and in written submissions to the court, that he had been convicted of the felony described in the NTA. Any alleged error in considering the criminal judgment was harmless. With respect to alienage, the BIA found no clear error in the IJ's findings of fact and that DHS established Cover's alienage based on the totality of the record. The BIA also determined that Cover's constitutional challenges lacked merit.

Cover timely filed this petition for review.[3]

## II.  JURISDICTION

---

[3]We review only the BIA's decision, except to the extent that it adopts the IJ's opinion. See Mu Ying Wu v. U.S. Att'y Gen., 745 F.3d 1140, 1153 (11th Cir. 2014). The BIA did not expressly adopt the IJ's opinion, so we review only the BIA's decision. See id.

We lack jurisdiction to review a final removal order against an alien who is removable under INA § 237(a)(2)(A)(iii) due to a prior conviction for an aggravated felony, which includes a drug trafficking crime.  INA § 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C); see INA § 101(a)(43)(B), 8 U.S.C. § 1101(a)(43)(B).[4] Similarly, we lack jurisdiction to review a final removal order against an alien who is removable under INA § 237(a)(2)(B)(i), due to a conviction for a controlled substance offense.  INA § 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C).

However, we retain jurisdiction to review whether the statutory conditions limiting review exist.  Sebastian-Soler v. U.S. Att'y Gen., 409 F.3d 1280, 1283 (11th Cir. 2005).  Thus, we have jurisdiction to review whether Cover (1) is an alien (2) who is removable by reason of having committed a crime covered by the statute.  Id.[5]

We also have jurisdiction over constitutional claims: INA § 242(a)(2)(D) vests this Court with jurisdiction to review all appeals that present "constitutional claims or questions of law."  8 U.S.C. § 1252(a)(2)(D); Alvarez Acosta v. U.S. Att'y Gen., 524 F.3d 1191, 1195-96 (11th Cir. 2008).

---

[4]We review our own subject matter jurisdiction de novo.  Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006).

[5] In this case, our jurisdictional inquiry here actually merges with the merits of Cover's appeal.  See Adefemi v. Ashcroft, 358 F.3d 828, 832-33 (11th Cir. 2004) (en banc) (determining this Court's jurisdictional inquiry as to whether it could review an alien's removal order merged with the merits of the alien's appeal into whether the government sufficiently proved that the alien was convicted of a deportable offense).

9

### III.  REMOVABILITY

The government "has the burden of establishing by clear and convincing evidence" that the individual in removal proceedings is (1) an alien and (2) deportable.  INA § 240(c)(3)(A); 8 U.S.C. § 1229a(c)(3)(A).[6]

Evidence of foreign birth gives rise to a rebuttable presumption of alienage, and the burden shifts to the individual in removal proceedings to prove citizenship. Matter of Rodriguez-Tejedor, 23 I. & N. Dec. 153, 164 (BIA 2001).  An alien who, after admission, is convicted of conspiracy to possess with intent to distribute 1,000 kilograms or more of marijuana is deportable.[7]  See INA § 237(a)(2)(A)(iii), (a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(A)(iii), (a)(2)(B)(i); INA § 101(a)(43)(B), 8 U.S.C. § 1101(a)(43)(B).

The BIA has determined that, although some form of authentication is required of domestic or foreign records presented in immigration proceedings, "any authentication procedure that comports with common law rules of evidence constitutes an acceptable level of proof."  Matter of Velasquez, 25 I. & N. Dec.

---

[6]We review the BIA's factual findings to determine whether they are supported by substantial evidence.  Adefemi, 386 F.3d at 1026-27.  "Under the substantial evidence test, we view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision."  Id. at 1027.  We may reverse the BIA's factual findings only when the record so compels.  Id.  Constitutional questions and legal conclusions are reviewed de novo.  Zhou Hua Zhu v. U.S. Att'y Gen., 703 F.3d 1303, 1307 (11th Cir. 2013).

[7]The term "removable" encompasses the term "deportable."  Dormescar v. U.S. Att'y Gen., 690 F.3d 1258, 1261 (11th Cir. 2012).

680, 684 (BIA 2012) (alteration and quotation marks omitted); see Matter of D-R-, 25 I. & N. Dec. 445, 458 (BIA 2011).  "The guiding principle is that proper authentication requires some sort of proof that the document is what it purports to be."  Matter of Velasquez, 25 I. & N. Dec. at 684 (quotation marks omitted).[8]

Here, substantial evidence supports the BIA's determination that the government established that Cover was removable.  As to alienage, the certified copy of Cover's Birth Registration Form showed that he was born in Kingston, Jamaica.  The IJ found that the copy of Cover's Birth Registration Form was reliable, and the document was certified as a true copy of the original.  This was sufficient to authenticate the document.  See id.  Because the government presented evidence of Cover's foreign birth, a rebuttable presumption of alienage arose.  See Matter of Rodriguez-Tejedor, 23 I. & N. Dec. at 164.  Cover did not submit any evidence to rebut this presumption.

As to his conviction for a deportable offense, a certified copy of the judgment entered in Cover's criminal case showed that he was convicted of conspiracy to possess with intent to distribute 1,000 kilograms or more of marijuana.[9]  See 8 C.F.R. § 1287.6(a); see also INA § 240(c)(3)(B)(i), 8 U.S.C.

_____

[8]We reject Cover's claim that 8 C.F.R. § 1287.6 is the only way to authenticate official records.

[9]Cover's argument—that the conviction record submitted by the government was not properly authenticated because it did not feature the seal of the court and was not attested to by the district court judge—fails.  His stance relies on 28 U.S.C. § 1738, which is applicable only to judgments from courts of a "State, Territory, or Possession" of the United States, whereas the

§ 1229a(c)(3)(B)(i) (stating that a certified official record of judgment and conviction "shall constitute proof of a criminal conviction"). Further, Cover admitted his guilty plea multiple times.[10] We cannot say that the record compels reversal of the BIA's determination that the government's evidence established Cover's removability.

## V. DUE PROCESS

"To establish due process violations in removal proceedings, aliens must show that they were deprived of liberty without due process of law, and that the asserted errors caused them substantial prejudice." See Lonyem v. U.S. Att'y Gen., 352 F.3d 1338, 1341-42 (11th Cir. 2003).

## A. Evidence Produced Following March 2012 BIA Remand

Cover argues that his due process rights were violated by the IJ holding a second hearing after the BIA's March 2012 remand. He contends that the IJ

---

conviction at issue was in a federal district court. Similarly, his argument that additional certification was required because the document was submitted by electronic means is without merit, because the document was certified by a court official as an official record from its repository, as required by the relevant statutory provision. INA § 240(c)(3)(C), 8 U.S.C. § 1229a(c)(3)(C).

[10]Cover also argues that his conviction may not be used as the basis for his removability because it was obtained in violation of his constitutional rights. Cover may not collaterally attack his underlying conviction in an immigration proceeding. See Mohammed v. Ashcroft, 261 F.3d 1244, 1251 (11th Cir. 2001) (stating that the petitioner's purported due process claim—that he was not advised of the immigration consequences of his guilty plea— should be challenged in a collateral attack on his conviction and is not reviewable in a removal proceeding).

12

should have determined his removability based solely on the evidence presented prior to the IJ's first order of removal in October 2009.[11]

Under the circumstances of this case, the IJ was not barred from considering the government's evidence filed following the BIA's March 2012 remand.[12] Cover had admitted removability in his October 5, 2011 motion and his own attachments, and thus, during the October 27, 2011 hearing, the government had no need to present evidence establishing Cover's removability.

After the BIA's March 2012 remand of Cover's case, Cover moved to withdraw his October 5, 2011 motion (admitting his alienage and conviction for a deportable offense). After that motion was granted, it was only then that the government had to introduce evidence to show Cover's removability. At that point, the IJ held a hearing on the sufficiency of the government's evidence, and the IJ found Cover removable. Therefore, Cover's due process rights were not violated by the IJ's consideration of the government's evidence presented after the BIA's March 2012 remand.

---

[11]To the extent Cover argues that principles of collateral estoppel barred further proceedings on removability, we reject his argument. Collateral estoppel only applies "when an issue of ultimate fact has once been determined by a valid and final judgment." United States v. Valdiviez-Garza, 669 F.3d 1199, 1201 (11th Cir. 2012) (quotation marks omitted). The BIA's March 2012 remand order was not a final order, and in any event, the BIA did not decide the issue of whether the government established that Cover was removable.

[12]We acknowledge that, generally, following a remand from the BIA, an IJ "has authority to consider additional evidence if it is material, was not previously available, and could not have been discovered or presented at the former hearing." In re M-D-, 24 I. & N. Dec. 138, 141 (BIA 2007).

**B.      Request for Subpoenas**

Cover also argues that the IJ violated his due process rights by not issuing a subpoena to the AUSA involved in his criminal case.

In an immigration proceeding, the IJ has "exclusive jurisdiction to issue subpoenas," and the IJ shall issue the subpoena "[u]pon being satisfied that a witness will not appear and testify or produce documentary evidence and that the witness' evidence is essential."  8 C.F.R. § 1003.35(b)(1), (3).

Cover argues that the AUSA's testimony was essential because it would have shown that the AUSA told him that he would not be removed if he pled guilty and that, because of that oral promise, he cannot be ordered removed.

Here, there is no indication, much less evidence, that the Attorney General delegated to the AUSA involved in Cover's criminal case the power to make promises regarding removability during the plea negotiations in Cover's case.[13] See San Pedro v. United States, 79 F.3d 1065, 1071-72 (11th Cir. 1996) (holding that (1) the Attorney General has the power to promise a criminal defendant during plea negotiations that he will not be deported, (2) U.S. Attorneys and AUSAs have the power to promise a criminal defendant non-deportation only where the Attorney General has delegated that power, and (3) the Attorney General had not

---

[13]Cover also argues, as he did below, that the BIA erred by not determining that the government was estopped from removing him because of the prosecutor's alleged promise. However, that argument also hinges on the prosecutor's ability to bind DHS with a promise, and therefore, fails.

14

delegated that power to U.S. Attorneys or AUSAs by way of the United States Attorney's Manual). Notably too, there is no such promise in Cover's written plea agreement, which states that it constitutes "the entire agreement" between the parties.

Therefore, Cover did not show that the AUSA's testimony would have been essential to the removal proceedings. Thus, it was not error for the IJs' to refuse to subpoena his witnesses, C.F.R. § 1003.35(b), and his due process rights were not violated.[14]

## VI.  FIFTH AMENDMENT PRIVILEGE

Cover argues that the BIA erred in relying on his statements to the IJ after he invoked his Fifth Amendment privilege, admitting that he pled guilty in 2007 to a criminal offense.

The privilege afforded by the Fifth Amendment protects one from "being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." United States v. Lopez-Garcia, 565 F.3d 1306, 1316 (11th Cir. 2009) (quotation marks omitted).

---

[14]Cover also sought to have his former attorneys testify that they told him that he would not be removed if he pled guilty. This evidence was relevant to Cover's ineffective assistance of counsel claim. As discussed above in footnotes, a petitioner cannot collaterally attack his conviction in immigration proceedings. Thus, Cover has not shown that this evidence was essential.

Here, it is unclear to what extent, if any, the BIA relied on Cover's statements, made after he invoked his Fifth Amendment rights, in affirming the IJ's removal order. In any event, Cover has not shown how his admission of his alienage or of his 2007 conviction would have exposed him of criminal liability, and thus, he was has not shown that he was entitled to invoke his Fifth Amendment privilege. See id. Moreover, there was substantial evidence to support a finding of removability, even without considering statements Cover made in his removal proceedings after invoking the Fifth Amendment, such that any error was harmless.

## VII.  CONCLUSION

For the foregoing reasons, we deny Cover's petition for review.

**PETITION DENIED.**

16