# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued May 9, 2011          Decided July 15, 2011

No. 10-5355

DAVID M. ROEDER, ET AL.,
APPELLANTS

v.

ISLAMIC REPUBLIC OF IRAN AND UNITED STATES OF AMERICA,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-00487)

*George J. Terwilliger III* argued the cause for appellants. With him on the briefs were *Daniel B. Levin*, *V. Thomas Lankford*, and *Terrance G. Reed*.

*Lewis S. Yelin*, Attorney, U.S. Department of Justice, argued the cause for appellee United States of America. With him on the brief were *Tony West*, Assistant Attorney General, *Ronald C. Machen*, U.S. Attorney, and *Douglas N. Letter*, Attorney. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: GARLAND and GRIFFITH, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

RANDOLPH, *Senior Circuit Judge*: Plaintiffs are Americans taken hostage in Iran in November 1979, and their families. The Iranians held the hostages for nearly 15 months. They were freed only when the United States and the Islamic Republic of Iran entered into the Algiers Accords. *See generally* Iran–United States: Settlement of the Hostage Crisis, 20 I.L.M. 223 (1981). In the Accords, the United States made promises to Iran in order to secure the hostages' release. One of these was a promise to bar the prosecution against Iran of any legal action by a U.S. national arising out of the hostage taking.

For the sake of clarity we will refer to plaintiffs collectively as "Roeder." In Roeder's last action against Iran for damages, we held that the Foreign Sovereign Immunities Act (FSIA), Pub. L. No. 94-583, 90 Stat. 2891 (codified as amended in scattered sections of 28 U.S.C.), and in particular, the 2002 amendments to the Act, did not abrogate the promise made by the United States in the Algiers Accords to bar actions such as Roeder's. *See Roeder v. Islamic Republic of Iran*, 333 F.3d 228 (D.C. Cir. 2003) (*Roeder I*).

Five years after we affirmed the dismissal of his suit, Roeder brought a new complaint in the district court, this time relying on Congress's 2008 amendments to the FSIA. As in the past case, Iran did not respond, the United States intervened and filed a motion to dismiss, and the district court granted the motion. The question in this appeal is whether the 2008 amendments to the FSIA reneged on the promise of the United States in the Accords to bar Roeder's suit.

"The FSIA provides generally that a foreign state is immune from the jurisdiction of the United States courts unless one of

the exceptions listed in 28 U.S.C. § 1605(a) applies." *Roeder I*, 333 F.3d at 235. A provision in effect when Roeder brought the last suit, but now repealed—28 U.S.C. § 1605(a)(7)(A) (2000)—stated that immunity did not apply if the foreign state had been designated a state sponsor of terrorism when the act in question occurred or as a result of the act. Iran did not meet that description. *See Roeder I*, 333 F.3d at 235.[1] In 2001 and 2002, while *Roeder I* was pending in the district court, Congress amended the FSIA specifically to deprive Iran of immunity for acts related to Roeder's case. *See* Pub. L. No. 107–77, § 626(c), 115 Stat. 748, 803 (2001); Pub. L. No. 107–117, Div. B, § 208, 115 Stat. 2230, 2299 (2002) (correcting scrivener's error); *Roeder I*, 333 F.3d at 235. Even so, the Algiers Accords remained a bar to Roeder's suit. *Roeder I*, 333 F.3d at 237. The 2001 and 2002 amendments, we held, did not provide the "clear expression" of congressional intent necessary to abrogate an executive agreement. *Id.* at 237.[2]

---

[1] As we explained, Iran was designated a state sponsor of terrorism in 1984. But that designation apparently rested on Iran's support of terrorism outside its borders and not on any acts related to the hostage crisis. *Roeder I*, 333 F.3d at 235.

[2] We explained this clear statement rule in *Roeder I*:

[N]either a treaty nor an executive agreement will be considered "'abrogated or modified by a later statute unless such purpose on the part of Congress has been clearly expressed.'" *Trans World Airlines v. Franklin Mint Corp.*, 466 U.S. 243, 252 (1984) (quoting *Cook v. United States*, 288 U.S. 102, 120 (1933)); *see Weinberger v. Rossi*, 456 U.S. 25, 32 (1982); *Comm. of United States Citizens Living in Nicaragua v. Reagan*, 859 F.2d 929, 936-37 (D.C. Cir. 1988). The way Congress expresses itself is through legislation.

\* \* \*

After our decision in *Roeder I*, Congress again amended the FSIA. The 2008 amendments created a generally applicable private right of action against foreign states for state sponsorship of terrorism. *See* 28 U.S.C. § 1605A(c) (Supp. II 2008). The amendment was a response to *Cicippio-Puleo v. Islamic Republic of Iran*, 353 F.3d 1024 (D.C. Cir. 2004), which held that the FSIA itself did not create a right of action against foreign states and that plaintiffs had to identify some other source of law (such as state law) granting them a right to recover. The 2008 amendments also reenacted, with minor changes, the provision granting the district court jurisdiction over claims related to the acts involved in Roeder's case. *See* 28 U.S.C. § 1605A(a)(2)(B) (Supp. II 2008).[3]

> Executive agreements are essentially contracts between nations, and like contracts between individuals, executive agreements are expected to be honored by the parties. Congress (or the President acting alone) may abrogate an executive agreement, but legislation must be clear to ensure that Congress—and the President—have considered the consequences. The "requirement of clear statement assures that the legislature has in fact faced, and intended to bring into issue, the critical matters involved in the judicial decision." *Gregory v. Ashcroft*, 501 U.S. 452, 461 (1991).

*Roeder I*, 333 F.3d at 237-38 (parallel citations omitted).

[3] 28 U.S.C. § 1605A(a) now provides, in relevant part:

(a) In general.—

(1) No immunity.—A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case not otherwise covered by this chapter in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if

Roeder argues that the 2008 FSIA amendments, by creating a federal cause of action against state sponsors of terrorism, rendered our country's commitment to bar claims like Roeder's a nullity.  As the district court pointed out, during the five years between *Roeder I* and the 2008 amendments, in the 107th, 108th, 109th, and 110th sessions of Congress, legislators tried—and failed—"to enact legislation that would explicitly abrogate the provision of the Algiers Accords barring the hostages' suit."  *Roeder v. Islamic Republic of Iran*, 742 F. Supp. 2d 1, 5 (D.D.C. 2010) (quoting JENNIFER K. ELSEA, CONGRESSIONAL RESEARCH SERV., SUITS AGAINST TERRORIST STATES BY VICTIMS OF TERRORISM 31 (2008), *available at* http://www.fas.org/sgp/crs/terror/RL31258.pdf).  Just as in *Roeder I*, the amendments that finally passed "do not, on their face, say anything about the Accords."  333 F.3d at 236.  In *Roeder I* we gave an example of language that might suffice to abrogate even without an express reference to the Accords, *id.* at 237, but the 2008 amendments contain no such language or

---

such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.

(2) Claim heard.—The court shall hear a claim under this section if—

* * *

(B) the act described in paragraph (1) is related to Case Number 1:00CV03110 (EGS) in the United States District Court for the District of Columbia.

The case number referred to in subsection (a)(2)(B) is the number of one of Roeder's prior suits.

anything comparable. Nevertheless, Roeder believes that the new, general, terrorism cause of action unambiguously conflicts with the prosecution bar contained in the Algiers Accords and that the latter must necessarily give way.[4]

The premise of Roeder's argument is that the 2008 amendments to the FSIA permitted him to revive his dismissed claims and invoke the new federal cause of action in 28 U.S.C. § 1605A(c) against Iran. We do not think this is so clear. Section 1605A(c) created a statutory cause of action for terrorism-related injuries against a foreign state that is a "state sponsor of terrorism" as described by 28 U.S.C. § 1605A(a)(2)(A)(i).[5] As relevant here, this includes nations the

---

[4] Nothing in our decision in *Roeder I* turned on whether Roeder had a cause of action under federal law or under state law or under some other source of law. But we will assume *arguendo* that if the 2008 amendments unambiguously created a cause of action available to Roeder against Iran, this would have the effect of abrogating the Accords.

[5] Section 1605A(c) reads in whole:

(c) Private right of action.—A foreign state that is or was a state sponsor of terrorism as described in subsection (a)(2)(A)(i), and any official, employee, or agent of that foreign state while acting within the scope of his or her office, employment, or agency, shall be liable to—

(1) a national of the United States,
(2) a member of the armed forces,
(3) an employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment, or
(4) the legal representative of a person described in paragraph (1), (2), or (3),

State Department had designated sponsors of terrorism at the time of the filing of a prior, "related action" in cases "filed under [§ 1605A] by reason of section 1083(c)(3) of [the National Defense Authorization Act for Fiscal Year 2008] . . .." 28 U.S.C. § 1605A(a)(2)(A)(i)(II). Iran had been so designated by the time Roeder brought the last suit. But the question remains whether *Roeder I* was a "related action" within the meaning of § 1083(c)(3).

Section 1083(c) of the National Defense Authorization Act for Fiscal Year 2008—titled "Application to Pending Cases"—determines if plaintiffs in cases filed before the addition of the federal terrorism cause of action can rely on the new cause of action when filing a new action under § 1605A that would otherwise be barred by the statute of limitations in 28 U.S.C. § 1605A(b). *See* Pub. L. No. 110-181, § 1083(c), 122 Stat. 3 (codified at 28 U.S.C. § 1605A note).[6] Subsection (c)(3) provides, "If an action arising out of an act or incident has been timely commenced under [28 U.S.C. § 1605(a)(7)], . . . any other action arising out of the same act or incident may be brought under [28 U.S.C. § 1605A]" if it is commenced within 60 days of the entry of judgment in the original action or of the date of enactment of the amendments. Roeder contends that this

---

for personal injury or death caused by acts described in subsection (a) (1) of that foreign state, or of an official, employee, or agent of that foreign state, for which the courts of the United States may maintain jurisdiction under this section for money damages. In any such action, damages may include economic damages, solatium, pain and suffering, and punitive damages. In any such action, a foreign state shall be vicariously liable for the acts of its officials, employees, or agents.

[6] The parties have assumed—at least for the sake of this appeal—that unless Roeder's case falls within § 1083(c)(3), it would be barred by the statute of limitations in 28 U.S.C. § 1605A(b).

provision, together with § 1605A(c), unambiguously gives him a cause of action to sue Iran.

*Roeder I* was filed under § 1605(a)(7), the prior terrorism exception to foreign sovereign immunity. Roeder's new action duplicates the old one. Yet the related action provision of § 1083(c)(3) does not seem to contemplate that the later, related suit would be one that simply replicates the earlier action. The section speaks of "any *other* action," and it turns on whether the new action "arises from" the same act or incident, not on whether it is identical to the prior suit or even brought by the same plaintiff. In addition, the refiling of duplicate actions is dealt with in § 1083(c)(2), but that is a provision Roeder cannot invoke because it expressly requires that the earlier action be pending at the time of the 2008 amendments. *See* National Defense Authorization Act for Fiscal Year 2008, § 1083(c)(2)(a)(iv). We mention this not because it is conclusive, but because it casts some doubt on whether § 1083(c) is as clear as Roeder makes it out to be.

The district court relied on other considerations in deciding that the 2008 amendments were not the sort of clear expression that would be needed to disregard the Accords' bar against suit. We are content to place our decision on the district court's analysis. The court found that § 1083(c)(3) was ambiguous regarding whether plaintiffs, such as Roeder, whose cases were not pending at the time of the 2008 amendments could rely on that provision to resurrect their actions long after they had been dismissed.

In arguing against this conclusion, Roeder points to the express pending-action requirement contained in § 1083(c)(2), which allows plaintiffs who had relied on § 1605(a)(7) as creating a cause of action to convert their claim to one under § 1605A(c). He contends that the absence of similar language

in § 1083(c)(3) strongly suggests that subsection (c)(3) contains no such requirement. We do not deny the force of Roeder's argument. In the end it may well represent the best reading of § 1083(c)(3). But our focus is not on the best reading. Legislation abrogating international agreements "must be clear to ensure that Congress—and the President—have considered the consequences." *Roeder I*, 333 F.3d at 238. An ambiguous statute cannot supercede an international agreement if an alternative reading is fairly possible. *Fund for Animals, Inc. v. Kempthorne*, 472 F.3d 872, 879 (D.C. Cir. 2006). This clear statement requirement—common in other areas of federal law, *see Roeder I*, 333 F.3d at 238—"assures that the legislature has in fact faced, and intended to bring into issue, the critical matters involved in the judicial decision." *Gregory v. Ashcroft*, 501 U.S. 452, 461 (1991).

With respect to whether Roeder's current suit qualifies as a related action, § 1083(c)(3) is unclear. Section 1083(c)(3) refers to "an action" that "has been timely commenced" under the FSIA's prior terrorism exception. Roeder contends that this unambiguously refers to every action brought before the enactment of § 1083 that was timely when filed. We think, however, that the language can fairly be read to refer only to those cases timely commenced under § 1605(a)(7) that were still pending when the Act was passed. If Congress had meant to embrace more than just pending cases, it might have used the past simple, "was timely commenced." And it might have placed § 1083(c)(3) outside of a section entitled "Application to Pending Cases." Instead, Congress chose language suggesting that the predicate action in § 1083(c)(3) is one that *has* been commenced but *is* still ongoing. It is thus unclear whether Roeder—whose prior case was not pending and whose new case would have been time barred—could sue under § 1605A(c).

Roeder's resort to canons of construction does not render § 1083(c)(3) any more certain. For the reasons given by the district court, we are not convinced that a pending-action requirement would make any part of § 1083(c)(3) wholly superfluous. *See Roeder*, 742 F. Supp. 2d at 16. And while "it is generally presumed that Congress acts intentionally and purposefully when it includes particular language in one section of a statute and omits it from another," *BFP v. Resolution Trust Co.*, 511 U.S. 531, 537 (1994), the strength of that presumption varies with context, *see City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 435-36 (2002). Here, the relevant subsections were added at different times in the legislative process, serve different purposes and share little similar language. *Compare* H.R. 1585, 110th Cong., § 1087 (as passed by Senate, Oct. 1, 2007), *with* H.R. 1585, 110th Cong., § 1083 (as passed by Senate, Dec. 14, 2007). In these circumstances, the presumption is not of such power that it alone makes § 1083(c)(3) unambiguous.

Because of § 1083(c)(3)'s ambiguity regarding whether Roeder, whose case was not pending at the time of enactment, may file under the new terrorism cause of action, we are required again to conclude that Congress has not abrogated the Algiers Accords. We also reject Roeder's alternative argument that the reenacted and partially revised jurisdictional provisions of the FSIA abrogate the Accords. These provisions are not meaningfully different than they were when presented to us in *Roeder I*. For the foregoing reasons, the order of the district court is

*Affirmed.*